JOHN M. JOHNSON, an Infant, by CAROLINE LOCKE, His Guardian ad Litem, Respondent, *v.* THE CITY OF NEW YORK, Appellant.

Negligence — construction of sewer in city street — duty of city authorities to protect travelers and others using street — when city not liable for injuries to boy who fell in trench for sewer.

1. A municipality is required to exercise reasonable care to keep its streets in safe condition for travelers and all other persons who may lawfully use them, but a street that is torn up for the building of a sewer cannot be safe in the ordinary acceptance of the term, for the very prosecution of the work creates obvious dangers. In such circumstances a municipality is chargeable with a reasonable degree of care and diligence in employing safeguards to prevent wayfarers and others lawfully using a street from getting into pitfalls and places of hidden danger.

2. A city, through contractors, was constructing in a public street a large sewer laid at a depth of twenty-five to thirty-five feet. The trench for this work was about sixteen feet wide at the top, leaving a narrow strip of the roadway on either side not more than six or seven feet wide. The street was barricaded at each end of the block against vehicular traffic, and by signs, indicating that the street was closed, but the sidewalks were kept open for the use of the abutters and their families, and for the children who attended the public school situate in the block. A short distance from the school, at the time in question, there was a pile of sand, placed there during the progress of the work, three feet or more in height, which extended over the walk about two feet and out into the street from five to ten feet, so that the outer margin came to a point within a foot, more or less, of the trench. Plaintiff, a boy twelve years of age, going home from school, went upon this pile of sand, and sat there playing for a time. When he started to leave, he slid down with the sand into the trench and received the injuries for which this action is brought. *Held*, that, in the absence of evidence that it was chargeable with notice of some special danger to children from existing conditions, the city is not liable.

*Johnson* v. *City of New York*, 151 App. Div. 886, reversed.

(Argued March 20, 1913; decided April 4, 1913.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the second judicial department, entered May 1, 1912, affirming a judgment in favor of plaintiff entered upon a verdict.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Archibald R. Watson,* Corporation Counsel (*James D. Bell* and *Frank Julien Price* of counsel), for appellant. The defendant violated no obligation and omitted no duty which it owed to plaintiff; therefore, as matter of law the defendant was not guilty of negligence. (*McDonald* v. *Degnon-McLean Cont. Co.,* 124 App. Div. 824; *Hunt* v. *Mayor, etc.,* 109 N. Y. 134; *Maginnis* v. *City of Brooklyn,* 16 N. Y. S. R. 760; 126 N. Y. 644; *Hart* v. *Hudson River Bridge Co.,* 84 N. Y. 26; *Steinbrenner* v. *Forney Co.,* 143 App. Div. 73; *Albert* v. *City of New York,* 70 App. Div. 553.)

*Fred S. Lyke, Philip A. Brennan* and *George J. S. Dowling* for respondent. The defendant was guilty of negligence. (*Storrs* v. *City of Utica,* 17 N. Y. 104; *Brusso* v. *City of Buffalo,* 90 N. Y. 679; *McGuire* v. *Spence,* 91 N. Y. 303; *Bullock* v. *City of New York,* 99 N. Y. 654; *Johnson* v. *City of New York,* 186 N. Y. 146.)

WERNER, J. The plaintiff, a lad of twelve, fell into a trench which the defendant's contractor had made for the building of a sewer in Gold street, between Tillary and Johnson streets, in the borough of Brooklyn. He sustained severe injuries, and through his mother as guardian he instituted this suit to recover damages. At Trial Term he recovered a verdict which was sustained by a divided court at the Appellate Division, and the defendant has brought its appeal to this court. The case is one which must arouse sympathy even if it cannot bear

the test of rigorous legal rules, for the unfortunate plaintiff has doubtless sustained injuries which may affect the whole of his life. It is possible that this consideration may have had its influence in securing a verdict that was not satisfactory to either of the litigants, for both moved to have it set aside. The grounds of these motions are not set forth in the record, but obviously the plaintiff's counsel was not satisfied with the amount ($2,500), and the counsel for the defendant held to his contention, made upon the motions to dismiss the complaint, that the evidence did not support a verdict for the plaintiff.

We think the motion to dismiss the complaint, made at the close of the plaintiff's case, should have been granted; but the necessity for such a ruling was made even more apparent by the evidence adduced on behalf of the defendant. The whole case was then so conclusive against the plaintiff as to require the trial court to grant the motion when it was renewed.

There is no controversy as to the physical conditions which existed in Gold street at the time of the accident. The defendant, through its contractors, was constructing a sewer twelve feet in diameter, and this was to be laid at a depth variously stated of from twenty-five to thirty-five feet. The trench for this work was sixteen feet or more in width at the top, and left undisturbed a narrow strip of the roadway on either side, probably not more than six or seven feet in width. The walls of the trench were retained by sheathing which, in some places, had been driven down so that the upper end was level with the street, and in other places it protruded somewhat above this level. At intervals along the line of the work there were timbers or planks laid transversely from which were suspended chain hangers for the temporary support of the sewer and other pipes. Along the side of the trench was a "concrete mixer" which apparently occupied a part of the street and extended over into the sidewalk. This structure was movable and was changed

from point to point as the work progressed. Cement, crushed stone and sand were brought to this mixer, and after being converted into a semi-fluid concrete the material was taken in wheelbarrows to the trench. The sand thus delivered was evidently brought in dump carts or wagons and deposited in such piles as would naturally form in that method of delivery. This was the general condition in Gold street on the 20th day of May, 1908, when the plaintiff was hurt. After the close of the afternoon session of the public school he came to a place, near the school, where there was a pile of sand three feet or more in height, which extended over the walk about two feet and out into the street from five to ten feet, so that the outer margin came to a point within a foot, more or less, of the trench. This was near the mixer, which was then about thirty or forty feet from the entrance to the school. The plaintiff went to this pile where he saw another boy playing, and as he started to go home he slipped into the trench. His own narrative is as follows: "I tried to get up and go home, my foot slipped and I went down into the hole. I do not know how big this sand pile was. I went up on it and my foot slipped; my foot slipped on the sand; it caved under me and I went down with it, down into this hole." The only other eye witness to the whole of the accident was a boy named Richards, who was on the sand pile with the plaintiff. This witness testified: "Between the side of the hole and the sidewalk, and on the sidewalk, on the day the boy was hurt, for about ten feet there was well about three feet of sand. This sand was near the hole, about a foot and a half from it. It extended over the sidewalk, about ten feet from it, the edges. I was on that pile of sand. When he (plaintiff) got ready to go home he started to stand up, when he did he slid right in the hole off the sand. He was sitting down in the sand playing. He started to get right up and slid down in the hole. There was nothing on the edge of the hole to keep anybody from sliding in." No

witness attempts to state how long this particular pile
of sand had been there, although there is a bit of testi-
mony from which it may be inferred that the same condi-
tion had existed on the previous day.' The trend of all
the evidence, however, indicates that the conditions were
constantly changing as the materials were needed at dif-
ferent points in the progress of the work, and it seems to
be a fair inference, even from the testimony for the plain-
tiff, that this identified pile of sand had not existed for so
long a time as to charge defendant or its contractors with
notice of probable danger from that one source. This is
practically the whole of the story for the plaintiff. There
are a number of witnesses who testify as to the general
situation, but they add nothing of importance to what
has been referred to or quoted.

In what was the defendant negligent? Counsel for the
respondent argues that it was the duty of the defendant
to keep the street in a safe condition, and he attempts
to support his contention by citing such cases as
*McGarry v. Loomis* (63 N. Y. 104), *McGuire v. Spence*
(91 N. Y. 303), *Weston v. City of Troy* (139 N. Y. 281),
and other similar cases which are obviously not applica-
ble to such a situation as is disclosed by the record in
this case. It is horn-book law that a municipality is
required to exercise reasonable care to keep its streets in
a safe condition for travelers and all other persons who
may lawfully use them. But that is not the rule which
governs a case like this. Cities and villages must build
sewers and other conduits, the construction of which
necessitates the taking up of pavements and the making
of excavations. Manifestly a street that is torn up by
such operations cannot be safe in the ordinary acceptation
of the term, for the very prosecution of the work creates
obvious dangers. In such circumstances a municipality
is chargeable with a reasonable degree of care and dili-
gence in employing proper safeguards to prevent way-

farers, and others lawfully using a street, from getting into pitfalls and places of hidden danger. That was done in the present instance by barricading the street against vehicular traffic and by the display of signs indicating that the street was closed. Even that was apparently a work of supererogation, at least by day, for the character of the excavation and its surroundings were such as to bar the usual access to the street and to give notice to all that for the time being it was closed. For obvious reasons the sidewalks had to be kept open for the use of the abutters and their families, and for the children who attended the public school situate in the block, but not even a child, old enough to go to school, could have misapprehended the situation. The defendant and its contractors had apparently done everything for the safety of the public that reasonable prudence could have dictated, except to fence off the trench or to station a watchman at each sand pile. Nothing in the previous course of the work had indicated any necessity for such extraordinary precautions, and the record contains no suggestion that such a course would have been practicable even if the law were so stringent as to require it. Doubtless a barrier might have been erected that would have rendered impossible such an accident as befell this plaintiff, but we are not informed whether the sewer could have been built under such conditions. It is evident also that a man might have been stationed at each pile of sand to warn away the children, but the record contains no suggestion that children had previously played in the sand. Apart from all this, however, there is the conclusive answer that neither the defendant nor its contractor were bound to go to any such length unless previous experience with children there might have suggested the necessity for greater care than they exercised. They were not insurers against accident. They were simply bound to use such reasonable care to prevent accident as the nature of the work and the surroundings would suggest to men of ordinary

prudence and foresight. It may be that under certain circumstances, which are not here shown to have existed, the defendant and its contractors might have been chargeable with a degree of care respecting children that would not be necessary as to adults. Children have playful instincts which render some dangerous places peculiarly attractive. For purposes of illustration we may refer to the "mixer" in this case as an example. If, for instance, that mechanical appliance had been allowed to continue in motion unattended by workmen with the result that it had habitually attracted children to positions of danger, we might have a case in which even a municipality, in the prosecution of work in a public street, would be chargeable with a degree of care which, in similar circumstances but upon private property, could not be imputed to an owner of such an appliance. The well-known "turntable" case (*Walsh* v. *Fitchburg R. R. Co.*, 145 N. Y. 301), in which it was held that the defendant was not liable for injuries to a child at a turntable that was left unlocked and unguarded on the railroad lands, was decided upon the principle that one who maintains such an appliance upon his own lands is under no obligation, even to a trespassing infant, to keep it in a safe condition. Conceding that the rule of that case has no application to a similar situation in a public street, we do not perceive how that can help this plaintiff. The rule of reasonable care must be considered, not in the light of the accident which happened, but with reference to what ordinary prudence should have anticipated as likely to happen. In the absence of evidence tending to show that the defendant was chargeable with notice of some special danger to children in the conditions which existed, it would be as reasonable to hold that even if there had been a fence around the trench there should have been a watchman to prevent mischievous boys from climbing over it, as it would be to decide that the defendant should have anticipated that a boy was going to slide into this

excavation from a pile of sand three feet in height and covering an area of from eight to ten feet in diameter.

We have considered the case upon the evidence for the plaintiff, giving him the benefit of every inference which can legitimately be drawn in his favor. We might go farther and demonstrate by the more complete and convincing evidence adduced for the defendant that the conditions were clearly such as to impute to the defendant no negligence in respect of the unfortunate accident to the plaintiff. This we deem unnecessary, since the plaintiff's case must fail on his own showing.

The judgment should be reversed and a new trial granted, with costs to abide the event.

CULLEN, Ch. J., GRAY, COLLIN, CUDDEBACK and MILLER, JJ., concur; HISCOCK, J., dissents.

Judgment reversed, etc.