This action was begun in November, 1913. The action was brought to recover the sum of $60 for deficiency in the yearly rental, and $108 for repairs. Upon the trial plaintiff showed that it had relet the premises for one year for $720 as aforesaid, and it offered testimony tending to show that it had expended said sum of $108 for necessary repairs, before the new tenant took possession. This offered testimony was excluded, upon objection made by defendant's attorney. The court below dismissed the complaint, saying:

"The plaintiff offered no proof whatever that rent was unpaid, or of its efforts to rent the premises. The mere fact that it rented them for a less amount does not entitle the plaintiff to recover damages. Under the clause of the lease they were bound to rent them at the best price possible."

[1-4] The dismissal was error. It has repeatedly been held that a clause in a lease similar to the one first quoted is an agreement that the lease should be automatically renewed unless the notice provided for therein was given. Hopkins Realty Co. v. Kirshbaum, 84 Misc. Rep. 51, 145 N. Y. Supp. 882. The defendant, by failing to give such notice, became liable for a second year's rent. The landlord had a right to permit the premises to remain unoccupied and hold the tenant for the monthly rent reserved in the lease, or to relet the premises and hold the defendant for the deficiency for each month's rent. At the time this action was commenced the tenant's obligation to pay rent for the month of October only was due, and the difference between the rent reserved in the lease and the amount of rent received by the landlord under the reletting was but $5 for that month; and for this sum, as rental deficiency alone, a cause of action had accrued. This would not apply, however, to the cost of repairs. The defendant was liable under her lease for such sum as was necessary to put the premises in suitable condition for a new tenant, and plaintiff should have been allowed to prove the expense of so doing.

Judgment reversed, and new trial ordered, with costs to the appellant to abide the event. All concur.

---

BEEBE v. SCHENECTADY RY. CO. et al.   (No. 261-71.)

(Supreme Court, Appellate Division, Third Department.   November 11, 1914.)

MUNICIPAL CORPORATIONS (§ 404*)—EXCAVATIONS IN STREET—ACTIONS FOR INJURIES—INSTRUCTIONS.

The complaint in an action against a contractor alleged that he had been excavating at the intersection of a street with a street railway company's private right of way, and that plaintiff, while passing from one corner of such intersection to the other, across the right of way, was precipitated into an excavation negligently made and maintained by defendant, who negligently permitted the roadway to remain in a dangerous state between the tracks of the railway company, and negligently omitted to place lights, guards, and barriers. The evidence showed that the only excavation was the general excavation for the purpose of laying a pavement in the street, that the work of paving had progressed until the foundation was completed, and only the putting on of the surfacing materials remained to be done, that the engineer in charge stopped work for

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the winter some time before the accident, and that the street presented a smooth, solid surface, disturbed only by the railway tracks, which were about 10 inches above such surface. The court charged that it was plaintiff's claim that defendant should have left the place in a better condition for travel, and that, though he had a right to make the excavation, he should have made it more safe, and should have filled in to a certain extent, so as to make a reasonably safe place, and that this was the charge of negligence for the jury, and refused to charge that, in view of the contract, negligence could not be predicated on the failure to fill in between the tracks. *Held*, that this instruction was erroneous, and did not properly submit the case to the jury.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 989–991, 993–999; Dec. Dig. § 404.*]

Kellogg, J., dissenting.

Appeal from Trial Term, Albany County.

Action by Mary A. Beebe against the Schenectady Railway Company and Thomas H. Karr. From a judgment for plaintiff, and from an order denying a new trial, the defendant Karr appeals; and from a judgment dismissing the complaint as against the Railway Company, and an order denying her motion for a new trial, plaintiff appeals. Reversed, and new trial granted as to the defendant Karr.

Argued before SMITH, P. J., and KELLOGG, LYON, HOWARD, and WOODWARD, JJ.

Coughlin, Fitzsimmons & Archibald, of Albany (Joseph P. Coughlin, of Albany, of counsel), for appellant Karr.

Edwin W. Sanford, of Albany (Henry J. Crawford, of Albany, of counsel), for appellant Beebe.

Patrick C. Dugan, of Albany, for respondent Schenectady Ry. Co.

WOODWARD, J. The complaint in this action against Thomas H. Karr, a contractor engaged in road construction, and the Schenectady Railway Company, after the formal averments, alleges on information and belief:

That "on or about the 10th day of December, 1912, and for a long time prior thereto, the defendant Thomas H. Karr was engaged in excavating on said roadway or right of way of defendant company just south of its intersection with Nineteenth street, and on and along said Nineteenth street at and near its intersection with said roadway or right of way of defendant company, and along and outside of and between the tracks of said defendant railway company located upon said street and roadway or right of way of defendant company." That "on or about the said 10th day of December, 1912, after dark, and at about 7 o'clock in the evening of said day, this plaintiff left her residence on the west side of Twelfth avenue, just north of its intersection with said Nineteenth street, and proceeded along the westerly side of the said Twelfth avenue, and crossed the said Nineteenth street to the sidewalk on the southwesterly corner of said Nineteenth street and the roadway or right of way of defendant company aforesaid, where plaintiff turned easterly, intending to cross the said roadway or right of way of defendant company to the southeast corner thereof, and to a point where said defendant company maintained an established station and stopping place for the purpose of receiving and discharging passengers from its said cars, and where the cars of the defendant company stopped on the night in question for the purpose of taking on passengers for Green Island and Troy, and where the plaintiff intended to board one of defendant's said cars. That as plaintiff

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

was proceeding on the crosswalk across from the southwest corner of said Nineteenth street and said roadway or right of way of defendant company aforesaid to the southeast corner thereof, and at a point between the tracks of the defendant company, she was precipitated into a large, deep hole and excavation negligently and carelessly made and maintained by the defendants herein." That "the said accident was caused without any negligence on plaintiff's part contributing thereto, and solely by reason of the fact that on and prior to the said 10th day of December, 1912, the defendants and each of them negligently caused, permitted, and allowed the said roadway or right of way of defendant company, just south of its intersection with Nineteenth street, and said Nineteenth street at and near its intersection with said roadway or right of way of defendant company, and between the tracks of said railway company, and immediately outside of and adjoining and adjacent to the same, and at the said stopping place of the defendant's said cars, to be and remain in a dangerous state and condition and a bad state of repair, and negligently allowed said hole to be and remain in said state between the said tracks of the defendant railway company, and negligently omitted and failed to place lights, guards, and barriers to warn the plaintiff and others of the existence of said hole and dangerous condition, and to prevent plaintiff and others from falling into said hole and excavation, and that the said defendant company negligently permitted and allowed its cars to stop to receive and discharge passengers in dangerous proximity to said excavation, and negligently and carelessly compelled and invited the plaintiff to board one of its said cars at a point and place in dangerous proximity to said hole and excavation without any warning or notice to her of the existence of the same, and thereby and in consequence of the matters aforesaid the plaintiff was severely injured," etc.

With such a pleading we naturally look to the evidence to find that the individual defendant has wantonly or unlawfully entered the street, or the premises so immediately adjacent, and under such circumstances as to involve great danger, and there made an excavation, such as a cellar, a pit, or ditch for sewers, or something of that nature. But in the case now before us there is no such situation. The defendant Karr is a contractor engaged in constructing a piece of roadway in the city of Watervliet, under a contract entered into with the state of New York, under the provisions of chapter 30 of the Laws of 1909 (Consol. Laws, c. 25) and chapter 646 of the Laws of 1911, and the "large, deep hole and excavation" mentioned in the complaint is the general excavation of the dirt for the purpose of laying a pavement in Nineteenth street, in the city of Watervliet, as a part of the county highway in the county of Albany. There is no allegation of the complaint that this work was unlawful, or that it was done, or being done, in a careless or negligent manner, while the record clearly discloses that the work was being carried on under the provisions of the contract with the state of New York, and that the excavation originally made had been filled in, so that it practically covered the ties or sleepers of the defendant Schenectady Railway Company, which was operating an interurban line of street railway in Nineteenth street, the result being that Nineteenth street, for the distance covered by the contract, presented a practically smooth surface, with the rails of the Schenectady Railway Company projecting above the common level about 10 inches. In other words, the work of paving Nineteenth street had progressed to a point where the foundation was completed and the work of putting in the surfacing materials remained to be done. Under the provisions of the contract this material was not to be put

in during unfit weather, and this period was to be determined by the engineer in charge, who had placed the time at the 15th of November, 1911.

Nineteenth street extends in a general east and west line, and Twelfth avenue intersects it on the north, but does not cross. At the point where Twelfth avenue extended south would cross Nineteenth street, the defendant railway company's tracks leave Nineteenth street on a sharp curve and pass on to a private right of way, and just after passing around this curve from Nineteenth street it is claimed the defendant company maintained a stopping place, though the evidence would seem to indicate that the cars stop almost anywhere in that locality. It will thus be seen that when the construction work was stopped, in November, 1911, Nineteenth street at its intersection with Twelfth avenue presented the aspect of a cut about 10 inches deep, with a smooth, solid surface, disturbed only by the tracks of the Schenectady Railway Company, which curved out of that street onto its private right of way. At a point approximately upon the south line of Nineteenth street (the evidence not being conclusive upon this proposition), and apparently between the southerly line of the sidewalk, if extended, and the southerly boundary of Nineteenth street, there appears to have been a pathway 12 to 15 inches in width running along the excavation above described, and affording a rude crossing over the tracks of the defendant railway company, and it was here that the plaintiff slipped and sustained the injuries for which the jury has awarded her a verdict of $3,000 against the defendant Karr, while exonerating the Schenectady Railway Company from liability.

There is no mention of this pathway in the pleadings, and it is not contended that the defendant had anything to do with the construction or maintenance of the same. How it came to be there, or when it was constructed, nowhere appears. No complaint is made of the same; the alleged negligence all relates to the alleged "large, deep hole and excavation," which, as we have seen, was the lawful excavation necessary to the construction of the pavement, and which had already been filled in ready for the top dressing. The work was uncompleted, and had been lawfully suspended to await the coming of proper weather for completing the same; and it is difficult to understand, from the pleadings or the evidence, what duty the defendant Karr owed to the plaintiff in this action. Plaintiff's counsel suggests that a child would know; but the law requires, as a condition of liability for negligence, that the duty and obligation should be such as the common judgment of men would suggest, and counsel has failed to point out in his pleadings any duty which the defendant owed to the plaintiff which has not been fully discharged, and the evidence does not enlarge the scope of the pleadings. Parties go to court to try the issues made by the pleadings, and courts have no right impromptu to make new issues for them, on the trial, to their surprise or prejudice, or found judgments on grounds not put in issue and distinctly and fairly litigated. Wright v. Delafield, 25 N. Y. 266, 270; Donlon v. Donlon, 154 App. Div. 212, 218, 138 N. Y. Supp. 1039.

The plaintiff testified carefully in reference to her walk from her home on Twelfth avenue to the point of the accident. She testified that she was fully familiar with the situation at the point of the accident. She lived on Twelfth avenue, within a short distance of Nineteenth street, and had been over this pathway many times, and on the night in question she had started out to take one of the defendant railway company's cars to visit a friend. She was accompanied by her husband, who, she says, was following her along the narrow pathway because he thought he could watch her better. She says that the pathway was slippery, that it was raining and freezing and thawing, that the wind was blowing hard, and that the electric light which hung over the street intersection was swaying and throwing shadows, and that she was exercising every possible care to prevent falling, but that as she reached a point between the double tracks of the Schenectady Railway she slipped and fell, striking the tracks and sustaining the injuries complained of here. As we have already pointed out, there was nothing to show that the defendant Karr had anything to do with this slippery pathway, or that he even knew that there was any pathway. He had not held out any invitation to any one to use this highway. It was obviously under construction, and this fact was concededly known to the plaintiff. There was no allegation that the defendant Karr owed any duty of barricading this pathway to prevent any one from slipping down into the excavation, and there was no evidence in support of such a proposition. It was obviously impossible to do so, for the pathway crossed the tracks of the Schenectady Railway Company, which was operating cars over the same at intervals.

There was an allegation in the pleadings that the defendant had failed to place lights, guards, and barriers to warn the plaintiff and others of the existence of said hole and dangerous condition, and to prevent plaintiff and others from falling into said hole and excavation; but the learned trial court correctly told the jury that the plaintiff, who knew of the condition, and who testified that she walked this pathway with the facts in mind, was not wronged by a failure to display lights or to erect barricades, for the purpose of these would be to give warning of the danger, etc. But without any allegation in the complaint of any failure on the part of the defendant Karr to properly perform his contract, without any suggestion in the pleadings of any duty which he owed in respect to the leaving of the excavation open, and without any evidence to show that anything practical could have been done in the exercise of reasonable care, the court evolved a theory that it was the contention of the plaintiff that the defendant Karr should have filled in the spaces in some manner between the tracks of the railroad, so as to have afforded a better pathway than that which the plaintiff used; that is, after the accident has happened, a jury is to be permitted to say, without any evidence to support it, or allegation which would justify such evidence, that the defendant should have adopted some other method than he did, and without even clearly disclosing what that method should have been. The court in its charge said:

"But the claim of the plaintiff here, so far as the defendant contractor, Mr. Karr, is concerned, is that he should have left that place in a better condition for the purpose of traveling upon it by people who might have occasion to travel there. He had excavated up to the street line, or practically so. Now, he properly made that excavation. It was in the line of his contract, in the line of his duty, and he had a right to make that excavation. It was his duty and part of his contract to do so. But the theory of the plaintiff is that so far as he is concerned, having suspended the work several weeks prior to the accident, and having left it for the winter, that he should have taken some precautions to fill that in or to have made it in some way more safe for people who might have been traveling upon it. It seems to be the fact that it was his duty as part of his contract to restore the street between the tracks of the defendant company. That was a part of his contract, it seems. His contract called upon him, not only to make the excavation, but also to fill in and repave or restore the street between the tracks of the railroad company, as well as other parts of the street. The accident happened between the tracks of the railroad company, so that that duty was upon him. Now, of course, he had the right to suspend the work, and it was his duty to suspend the work, if the weather conditions required him to do so. But the plaintiff says that when he did that he should have had some regard for the safety of the traveling public, and that he should have filled in to a certain extent along the southerly edge of Nineteenth street, so as to make a reasonably safe place for people to walk upon; that he should have done that in the line of his duty, and the plaintiff claims that he should have done it, having reference to the safety of the traveling public. Now, that is the charge of negligence which is made against the defendant Karr, and it is for you to consider whether or not he was careless or negligent in that respect. That is the ground of negligence as far as he is concerned."

Just where the learned court finds in the pleadings any justification for this theory, just where the evidence indicates any such claim on the part of the plaintiff, we are unable to discover. The negligence alleged in the complaint relates wholly to the "large, deep hole and excavation," and there is no suggestion of what duty the defendant Karr owed to the plaintiff. It is true, of course, that the defendant's contract required him to fill in between the tracks, as well as all other parts of the highway which he had excavated; but that was a requirement of the completed contract, and the work had been lawfully suspended. The roadway was obviously obstructed by the tracks of the Schenectady Railway Company, but aside from that it presented a hard, level surface. The defendant did not hold out to any one that Nineteenth street was a safe place to travel, nor did he by any act on his part invite any one to use this pathway, or to in any manner come upon this highway. He was in possession of the highway for the purposes of his contract, but until it was completed and turned over to the public he owed no duty other than that of reasonable care to leave it in a reasonably safe condition, and there is not the slightest evidence in this case that he did not conform to this obligation. There is nothing in the defendant's contract, so far as we discover, which called upon him to make any provision for maintaining traffic of any kind upon this highway while it was under construction; no allegation of such a duty is made in the complaint, and no evidence is to be found in the record, so far as our examination goes, to warrant any such assumption, and the court in suggesting this issue was obviously making impromptu new issues for the parties to the surprise and prejudice

of the defendant Karr. While there was no direct exception to this part of the charge, defendant's counsel requested the court to charge:

"That there is no negligence to be predicated on the failure of Karr to fill in between the tracks of the traction company at that point, as the contract he made with the state prohibited him from filling in bituminous material between these tracks, as required by his contract, and the contract itself is in evidence, and the map showing the nature of the pavement that was to be laid there. The provision of the contract is that 'no bituminous material shall be laid in any year later than the date designated by the division engineer.'"

This request to charge was refused, thus emphasizing the charge previously made, and the exception to this refusal fairly raises the question which has been discussed.

The plaintiff was bound to allege and prove that the defendant Karr owed her some duty which he had failed to perform, and the record fails to show these necessary conditions to a recovery. There is nothing whatever to show that the defendant Karr owed any obligation to make this highway fit for public travel at any time during the progress of the work, and the mere fact that a jury thinks that it would have been a proper thing for him to have done so, long after the accident happened, is not sufficient to make the obligation. There is no evidence to show that any mere temporary filling would have resulted in greater safety, and the contractor was not bound to add perceptibly to the cost of the work in providing for the temporary convenience of the people of a particular neighborhood. The principles declared in Johnson v. City of New York, 208 N. Y. 77, 81, 101 N E. 691, 46 L. R. A. (N. S.) 462, seem to us conclusive here. The defendant Karr was not an insurer. He owed merely the duty of using such reasonable care to prevent accidents as the nature of the work and the surroundings would suggest to men of ordinary prudence and foresight, and the suggestion made to the jury, and which is not shown to have been practicable, would have involved an extraordinary degree of care, and obviously would not have suggested itself to any one prior to the happening of the accident, unless it might be those persons who would insist upon a contractor doing more than his contract required in behalf of a supposed public convenience.

The judgment and order appealed from by the defendant Karr should be reversed, and a new trial granted, with costs to appellant to abide the event.

HOWARD, J., concurs. SMITH, P. J., concurs in result, in a memorandum in which LYON, J., concurs. KELLOGG, J., dissents.

SMITH, P. J. (concurring in result). I concur in the recommendation of Justice WOODWARD for a reversal of this judgment and for a new trial, not, however, upon the ground assigned by him that there is no cause of action, but upon the ground that it was improperly submitted to the jury. A depression in a paved street of 10 inches adjoining the iron rail of a street railroad might well be deemed by the jury an unsafe condition. The defendant Karr could not finish his paving job, because it had become too late to put on the bituminous covering contemplated. He was not authorized, however, to permit

a dangerous trap in a public highway without some warning thereof. The plaintiff might rightfully insist that the jury should be allowed to say whether some light should not have been placed there to have given her warning of the unsafe condition, and also to have shown her its exact condition and location, when she was obliged to use this part of the street upon a dark night. It is true that she knew generally of this condition and this location, as she passed by there many times. But one who has passed over a defective walk many times and knows of its condition is not as matter of law guilty of contributory negligence, when, upon using it thereafter at night, he has fallen and has sustained injuries. One may rightfully use a highway for the purpose of going back and forth at any place, and this plaintiff cannot be said as matter of law to have been guilty of contributory negligence in using this part of the highway as a direct route to the street car which she was seeking to board.

---

REGA v. NEW YORK CENT. & H. R. R. CO.   (No. 287/58.)

(Supreme Court, Appellate Division, Third Department. November 11, 1914.)

RAILROADS (§ 278*)—INJURY TO LICENSEES—CONTRIBUTORY NEGLIGENCE.

A tallyman, employed to keep track of lumber loaded onto cars on his employer's switch, who, to avoid the rain, sat down on the track under one of a string of cars, leaning against the truck, and was injured when the car was moved by another car being switched, without warning, against the string, was guilty of contributory negligence as a matter of law, precluding recovery against the railroad company.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 891–900; Dec. Dig. § 278.*]

Woodward, J., dissenting.

Appeal from Trial Term, St. Lawrence County.