KLINGENSMITH ET AL., ADMRS., v. THE SCIOTO
VALLEY TRACTION CO.

*Negligence—Exercise of care toward trespassers—Tower for
high tension wires in public place—Duty to warn or pre-
vent public from climbing structure.*

1. The rule that an owner of property owes a trespasser no
duty except to refrain from doing him a wilful wrong has
no application to a structure erected and maintained in
a public place for the support of high-tension wires carry-
ing electricity.

2. A traction company constructed and maintained a tower
in a public street for the support of three high-tension
wires, each carrying 27,000 volts of electricity. The street
was in the suburb of a municipality and was used only
by persons residing in its vicinity, and by children as
a playground, which fact was known or should have been
known to the company. The tower in question was con-
structed of four posts set in the form of a square and
joined by lattice work, the bars of which were set about
one foot apart and extended from the ground to the top
of the tower, a distance of fifty feet, thereby forming
four ladders, one on each side of the tower and reaching
from the ground to its top.

*Held:* That the traction company owed an active duty to adopt
some means to warn and prevent the public, and partic-
ularly children, from going upon or attempting to climb
such tower.

(Decided July 16, 1924.)

ERROR: Court of Appeals for Pickaway county.

*Mr. Meeker Terwilliger* and *Mr. Barton Walters,*
for plaintiffs in error.

*Mr. Oscar W. Newman* and *Mr. Charles Ger-
hardt,* for defendant in error.

MIDDLETON, P. J.   The parties to this proceeding stand in the same relation to each other here as they did in the court below, where the plaintiffs instituted this action for damages for the death of their decedent, which death they claimed was occasioned by various acts of negligence on the part of the defendant, the traction company.   At the close of the plaintiffs' evidence in the trial court, and on motion of the traction company, the court directed a verdict in favor of the latter, and this action constitutes the main error complained of here.

The plaintiffs offered evidence tending to prove the following facts:

That said traction company is a corporation owning and operating an electric interurban railway, which runs from Columbus, Ohio, to Chillicothe, Ohio, passing through the city of Circleville; that the company also owns and operates an electric light plant in the latter city; that in the operation of these activities, the company, about twenty years ago, erected certain steel towers, on which it suspended its high-tension wires, one of such towers being located on Renick street, one of the streets of the city of Circleville, at a point adjacent to the right of way and near the line of the Pennsylvania Railroad Company; that immediately across said right of way and on the opposite side another tower was located, by means of which two towers the high-tension wires aforesaid were suspended over the right of way of such railroad company; that the tower on Renick street was constructed of four steel posts, set in the ground about four feet distant from each other, in the form of a square, and extending upward for a

distance of forty to fifty feet, gradually going to-gether at the top where about an eighteen-inch square was formed; that these posts had steel lat-tice work running diagonally from side to side on all four sides of the tower, from the ground to the top of the tower, the bars of which lattice work were about one foot apart and extended from the ground to the top of the tower, thereby forming four ladders, one on each side of the tower, which ladders were used for the purpose of ascending the tower; that there were three uninsulated wires attached to the top of the tower, each carrying about 27,000 voltage of electricity; that Renick street was a street running east and west and was a dead or blind street which ended at the right of way of the railroad company, without outlet, for which reason that part of the street adjacent to such right of way and on which the tower stood was not traveled by the general public but was used by children of tender years and older boys as a playground, which fact the company knew or should have known in the exercise of due care; that the division line between the city and Circleville town-ship, adjacent to the city, divided this street into about two equal parts, and the tower in question stood on that part of the street situate in Circle-ville township; and that the traction company, while having a franchise to use certain streets in the city of Circleville for the erection of poles and the operation of its business, had failed and neg-lected to include Renick street in said franchise, and was, therefore, upon the said street with said tower without any authority from any duly con-stituted public authority having control of that part of such street.

The evidence further showed that on the 12th day of March, 1922, plaintiffs' decedent, who was about sixteen and a half years of age, while playing with some companions in Renick street, about and near such tower, bantered one of his companions, another boy named Floyd Redman, to climb the tower to see which could climb the highest. This invitation was accepted by Redman and the boys started up the tower together, one on one side and the other on the opposite side of the tower. The testimony of certain eye-witnesses who were in that vicinity is to the effect that when the decedent, who was outclimbing his companion, had reached a point about three feet from the top of the tower there was a flash and an explosion like a pistol shot and the decedent fell to the ground, receiving injuries from which he in a short time died.

The plaintiffs claim that the defendant company was negligent in several respects, among which may be considered the following charges:

"1. In constructing said tower with a steel ladder on each side of the same, reaching from the ground to the top thereof.

"2. In failing and neglecting on March 12, 1922, and long prior thereto, to erect and maintain any guard or protection of any kind or character, or any structure around the bottom of said tower to prevent access thereto by boys and children.

"3. In failing on March 12, 1922, and long prior thereto, to erect and maintain danger signs, cautioning and giving notice to children, and the public in general, and especially to plaintiffs' decedent, of the high voltage carried by the high-tension wires on said tower, and of the new and dangerous instrumentality which said defendant

company had thereby introduced into said playground, and of the subtle and deadly static condition and hidden danger which said defendant was then and there maintaining in said public street and playground.

"4. In failing and neglecting on March 12, 1922, and long prior thereto, to provide guards and protection at the top of said tower at a sufficiently safe distance from said high tension wires to prevent children, boys and the public from being injured or killed by coming in contact with said high-tension wires, and from 'brushes' or disruptive discharges of electricity emanating therefrom."

It appears from the record that the trial court was of the opinion that the foregoing facts brought the case within the rule announced in *Railroad Co.* v. *Harvey,* 77 Ohio St., 235. It further appears from the record that the court was greatly influenced by the case of *Rose* v. *Habenstreit,* 9 Ohio App., 23. It may be said in respect to this latter case that it would be persuasive in the instant case were it not for the fact that the judgment therein was reversed in 100 Ohio St., 524.

The *Harvey case, supra,* has been so generally discussed by the courts of this state that we feel we could add nothing to what has been repeatedly said not only in respect to the rule it adopts but the reasons therefor. That case commits this state to the doctrine that the owner of premises owes a trespasser thereon no duty except to refrain from doing him a wilful wrong. The last pronouncement of the Supreme Court on this matter is found in *Hannan, Admr.,* v. *Ehrlich,* 102 Ohio St., 176. It is there said by Chief Justice Marshall that if

plaintiff's decedent was a trespasser defendant
owed him no duty except to refrain from wilful
wrongdoing.

To avoid the application of this rule in the in-
stant case it is strongly urged that the negligence
complained of was wilful and wanton on the part
of the company. It is sufficient to say in respect
to this claim that under the authority of *Payne,
Dir. Genl.,* v. *Vance,* 103 Ohio St., 59, there is no
substantial basis for this contention.

The doctrine of non-liability to a trespasser rests
upon the principle that to require the owner of
property to anticipate a trespass, and to prepare
his property at all times for such an eventuality,
would impose upon such owner a duty inconsistent
with his sovereign right to use his property and
control it as he saw fit. But under the facts in
the instant case was the decedent a trespasser in
the sense that term is understood in the applica-
tion of this rule of non-liability? We think not.
We are convinced from the language of the court
in the *Harvey case* that it did not intend to include
within the scope of that decision injuries resulting
to persons while upon property erected and main-
tained in public places, and particularly on public
grounds where children and minors congregate to
play and such fact is or should be known to the
offender.

Now in the *Harvey case* Judge Summers referred
to the case of *Lynch* v. *Nurdin,* 1 Adol. & El., 29.
In that case a horse and cart were left unattended
in a public street. A child of tender years climbed
upon the cart, and another child struck the horse,
whereupon it jumped and threw the child from

the cart and injured it. Judge Summers after re-
citing these facts said, page 251:

"The child was rightfully in the street, and the
fact that he meddled with the cart was not contrib-
utory negligence in one of his age, *and it is not
properly a case of trespass.*"

The italics are the writer's, but this observation
clearly indicates that the court did not intend to
extend the rule of the *Harvey case* to alleged tres-
passes on property standing in public places and
not properly protected by its owner.

Another court, in *Bottum's Admr.* v. *Hawks,* 84
Vt., 370, Ann. Cases, 1913A, 1025, while adhering
to the rule of non-liability to trespassers, said in
respect to the facts in *Lynch* v. *Nurdin, supra*:

"It is to be observed that in *Lynch* v. *Nurdin,*
the team was left standing in a public street—a
place where defendant's rights were qualified by
those of plaintiff. It might well be that in these
circumstances the defendant owed the plaintiff the
duty of active care."

Another very instructive case is that of *Robert-
son* v. *Rockland Light & Power Co.,* 176 N. Y.
Supp., 281, in which the facts are sufficiently stated
in the sixth paragraph of the syllabus, as follows:

"In suit for injuries received by a boy, who
climbed a pole maintained by a power company
near a school and was injured by the wires thereon,
whether the company was guilty of negligence in
maintaining steps on the pole from the ground
to the wire: *held,* under the evidence, for the jury."

The judge who delivered the opinion in that
case, in commenting upon the facts involved, said
at page 287:

"The position of the power company is quite

different, for it thus maintained this pole and wires in the public highway adjacent to this boy's school and between the playgrounds of boys who from natural impulse are prone to climb, with these steps unnecessarily permanently attached to the pole leading directly from the ground to its live wires, which were insufficiently insulated to prevent the escape of the electric current to such an extent as to cause injury, should contact be made therewith in such manner as to produce a circuit. It is not claimed that the power company omitted any statutory duty. Liability is claimed against it on the grounds of nuisance and negligence. I think it may not be said that it maintained a nuisance, for it was duly authorized to erect and maintain the poles and wires for the express purpose of transmitting through the wires this high-voltage electric current; and the evidence does not show either that it was customary or practicable so to insulate the wires as to prevent the escape therefrom of the electric current.  *  *  *

"It, however, in exercising this lawful right owed a common-law duty to the public in constructing and maintaining the poles and wires to exercise care commensurate with the danger to be apprehended. The evidence tending to show a general custom not to place steps on the poles accessible from the ground indicates apprehension, at least, that, if continued to the ground, children or others might be attracted thereto, and might use the steps and come in contact with the current. The decision of the appeal, as I view it rests on whether it may be held on this record as a matter of law that the power company fully discharged that duty,

or whether that became a question of fact which should have been submitted to the jury.

"Counsel for the power company relies on *Walsh* v. *Fitchburg R. R. Co.*, 145 N. Y., 301, 39 N. E., 1068, * * * as holding that in this state there is no liability to a trespasser for the maintenance on one's own land of a so-called nuisance attractive to children, such as a turntable, and he argues that the pole was on the private property of his client, and that therefore the plaintiff, in climbing the pole, was a trespasser, and that doctrine exonerates the power company from liability. I think there is a material difference between trespassing upon private premises and using private property left unguarded and unattended, either temporarily or permanently, in a public highway (see *McAlpin* v. *Powell*, 70 N. Y., 126, 26 Am. Rep., 555; *Beck* v. *Carter*, 68 N. Y., 283, 23 Am. Rep., 175); and the court of appeals has distinctly recognized that the turntable doctrine has not yet been extended to a dangerous appliance in, or a dangerous condition created in, a public street (see *Johnson* v. *City of New York* [208 N. Y., 77, 101 N. E., 691])."

The opinion then follows with a discussion of a great many cases, some of which are pertinent here, and the court concludes with this observation, page 289:

"On the facts and authorities cited I think this is a border case, but I am of opinion that it should have been submitted to the jury to determine, in the circumstances, whether the power company was guilty of negligence in maintaining the steps on its pole so near the ground. Both charges of negligence were, I think, for the jury."

In the case at bar the evidence shows that the

defendant erected this tower not only in a public place, but upon a playground where children of tender years and other minors were wont to congregate to play, a fact known to the company, or which should have been known. It was there without any right from any public body having control of the street. In a technical sense the company itself was maintaining a nuisance. But independent of that fact, it was supporting at the top of this tower three wires, each carrying 27,000 volts of electricity. These wires held one of the most dangerous and deadly instrumentalities in use by man. Death, by reason of the open access to such wires, was within easy reach. The average boy undoubtedly could climb the sides of that tower with as much ease as a squirrel would take an ordinary tree. The company, by reason of these facts, was bound to use the highest degree of care and skill in making that place safe to outsiders. From the evidence it appears that not one single thing was done by the company to prevent or warn people of the dangers lurking in and about that tower. The way was open to the top, and from all appearances free to all who would take the chance of going upon the tower, and the evidence shows that others did avail themselves of the opportunity to climb it. But this is not all. This structure held death from an agency not ordinarily known or understood by adults. It appears from the evidence that the decedent was first struck by what is known as a disruptive discharge or "brush." And it further appears from the evidence that from wires carrying such a high voltage as these involved here there are at times such disruptive discharges, which will cause death without

actual contact with the wires. Did the decedent know of such possibilities when he started up the tower on the occasion of his injuries? If he did he knew more of the qualities of electricity than any member of this court prior to the information obtained in this case.

We can not endorse a rule which, under all the facts in this case, would completely absolve this company from exercising some active duty in protecting the public from the dangers of this structure, situated as it was, and considering the conditions surrounding it. We are unwilling to extend the rule of non-liability to trespassers to a case of this character. It is our conviction, under the authorities, and with a proper regard for the rights of the public, that it was the duty of the traction company to adopt some means to prevent people from going upon the tower, or at least to place appropriate warnings thereon so that persons attracted thereto by curiosity would have some understanding of the dangers which would surround them if they attempted to go upon such structure. We think our position on this matter is in harmony with the view of the court in the case of *Isaac Leisy Brewing Co.* v. *Kapl*, 22 C. C. (N. S.), 309.

Our conclusion, therefore, is that on the question of the company's negligence the case should have gone to the jury; that whether or not the company was negligent was a fact primarily to be determined by the jury. And this is our view also in respect to the claim of contributory negligence. That matter involved the determination of certain facts which the jury only could decide. The mentality and general intelligence of the decedent, his knowledge or lack of knowledge of surrounding

conditions, how he compared under all the facts with other boys of his age, and what would be reasonable and ordinary care of the latter under the same or similar conditions, were all matters which came within the exclusive province of the jury to decide.

The action of the court in sustaining a motion to strike certain matters from the petition was proper, as was also its subsequent ruling excluding such matters from being admitted in evidence.

In view of the considerations aforesaid the court is of the opinion that the trial court erred in sustaining the motion for a directed verdict, and for such error the judgment is reversed and the case remanded to the Court of Common Pleas for further proceedings according to law.

*Judgment reversed, and cause remanded.*

MAUCK and SAYRE, JJ., concur.