Argued January 7, affirmed April 26, 1966

# SUMMERS *v.* GRANT PARK BAPTIST CHURCH ET AL

413 P. 2d 611

*Thomas K. Thorpe,* Portland, argued the cause for appellant. With him on the briefs were Williams, Montague, Stark & Thorpe, Portland.

*Paul W. Jones,* Portland, argued the cause for respondents. With him on the brief were Maguire, Shields, Morrison, Bailey & Kester and Thomas E. Cooney, Portland.

Before McAllister, Chief Justice, and Sloan, Goodwin, Denecke and Lusk, Justices.

DENECKE, J.

An action was brought against the defendant church to recover damages for personal injuries sustained by a five-year-old girl, Julie Ann Summers, who fell into a light well at the church where she was attending Bible school. The jury returned a defendant's verdict. The plaintiff appeals.

The trial court struck the two following charges of negligence:

"2. In maintaining and permitting a dangerous and unsafe condition upon the land in the nature of a concrete encased light-well at the south side of the church building in that no protective grating of any kind covered the opening.

"3. In failing to warn plaintiff or those in direction of her conduct and the location of her physical presence of the danger of the open light-well at the south side of the church building."

The only charge of negligence which the jury was allowed to consider is as follows: "In failing to provide adequate supervision of the small children members of the Vacation Bible School of which group plaintiff was one."

Plaintiff asserts that the trial court's striking of the first two quoted specifications of negligence was error. We hold that it was not.

The evidence was that at recess the plaintiff and her schoolmates played in a grassy area on the side of the church. Bordering this area there were four concrete light wells. These wells are about four feet deep and there is a concrete curb about six inches in height surrounding each well. The well into which Julie fell is about nine feet long and two feet wide. Around the well is a pipe railing with the top rail about three feet in height and another rail about halfway between the

top rail and the curb. The railing is supported by two pipe posts rising from the outside corners of the curb surrounding the well.

The evidence is conflicting whether or not the plaintiff had climbed upon the railing around the well before and had been warned not to play there. All agree that some children had climbed on the railing and had been told to get off. The evidence is that on the day of the injury Julie and others were seated upon the grass having refreshments while the supervisors left for a few minutes to retrieve some small boys who had run around to the front of the church. The supervisors came back and found Julie lying in the bottom of one of the wells and crying. Neither Julie nor anyone else testified how she got there. She suffered a compressed vertebra. We will assume that the jury could reasonably have found that Julie had been climbing upon the railing and fell into the well.

This case does not involve the "attractive nuisance doctrine," as Julie was invited to be upon the premises. However, a portion of the law applicable to a landowner's liability to tresspassing children is appropos. In *Pocholec v. Giustina,* 224 Or 245, 251, 355 P2d 1104 (1960), we stated: "After a careful study of the matter, we are convinced that the proper solution of the legal problems arising out of the trespass of children must rest upon the same general principles of liability as are involved in any other case in which a defendant creates an unreasonable risk of harm to a child." In the same case we adopted Dean Prosser's views of the proper law. Dean Prosser states that two conditions of a landowner's liability are that "(b) the condition is one of which the possessor knows or has reason to know, and which he realizes or should realize will involve an unreasonable risk of death or serious

bodily harm to such children, and (c) the children because of their youth do not discover the conditions or realize the risk involved in intermeddling in it or in coming within the area made dangerous by it, * * *."[1] 224 Or at 252.

We conclude that this light well is not a "condition * * * which * * * will involve an unreasonable risk of death or serious bodily harm to * * * children," and children appreciate the risk involved in playing on the railing. Therefore, the defendant was not negligent by maintaining a dangerous condition.

There is almost no condition which an adventurous child cannot turn into an injury-producer: trees, swings, slides, stairs, hard-surfaced playgrounds, and soft-surfaced playgrounds can all be a source of harm to the young. "Surely, it would be an intolerable burden to require a landowner 'to guard every stairway, cellarway, retaining wall, shed, tree and open window on his premises so that a child cannot climb to a precipitous place and fall off.'" 2 Harper and James, The Law of Torts, 1455, § 2715 (1956).

Only when a jury might find that the risk to children is unreasonable and that the harm possible is serious is there a question of fact to be determined.

Two examples of judicial action in this general area are *Gleason v. Housing Authority of City of Pittsburgh,* 354 Pa 381, 47 A2d 129 (1946); and *Schiavone v. Falango,* 149 Conn 293, 179 A2d 622 (1962). In the former case a four-year-old fell from the top of a six-foot-high slide onto a concrete playground and fractured his skull. A judgment for the defendant was affirmed. In the latter decision a two and one-half-

---

[1] Restatement (Second), Torts § 339, adopts its reporter's (Dean Prosser) views.

year-old fell off the side of a stairway. The court held for the defendant landowner.

The plaintiff contends that our recent decision of *Eberle v. Benedictine Sisters,* 235 Or 496, 385 P2d 765 (1963), is a precedent for the proposition that it is a jury question whether the light well was a dangerous condition. While the case does have some legal similarity, there was evidence in that case that the material involved, glass, was unsafe because it was double-strength window glass instead of quarter-inch plate, and was below the standard used in the community. In the present case there was no such comparable admissible testimony.

Affirmed.