Argued July 8, reversed and remanded November 13, 1968-

BOSIN, *Appellant, v.* OAK LODGE SANITARY
DISTRICT NO. 1, ET AL, *Respondents.*

447 P. 2d 285

*Gerald R. Pullen*, Portland, argued the cause for appellant. With him on the brief were Robert L. Mc-Kee and Bernard K. Smith.

*Herbert M. Schwab*, Portland, argued the cause for respondents. On the brief were Rives & Schwab and Leonard A. Girard.

Before PERRY, Chief Justice, and McALLISTER, SLOAN, O'CONNELL, GOODWIN, DENECKE and LUSK, Justices.

LUSK, J.

Plaintiff, a boy aged four and one-half years, fell into a hole in the street which had been dug by the defendants for the purpose of repairing a leak in an underground pipe. Through his guardian ad litem the boy brought this action to recover damages for the injuries sustained by him in the accident. Upon the trial the court granted a judgment of involuntary nonsuit and plaintiff appeals.

The sole question is upon the sufficiency of the evidence to prove that defendants were negligent as alleged in the complaint, to wit, in failing to cover the excavation so that small children would not fall into it and in failing to barricade the excavation so as to prevent small children from playing in the dirt around it.

The scene of the accident was Schroeder Street, a dead-end street in a residential district in Milwaukie, Oregon. The hole was dug on Friday, April 22, 1966,

and was left open over the week end. The dimensions hereinafter mentioned are approximate. The hole was four feet long at the bottom, seven to eight feet long at the top, not in excess of three feet wide at the top, and four and one-half feet deep in the middle, the deepest part. The bottom of the pipe was six feet below the surface of the street and a portion of the pipe six inches in length was left exposed when the workmen quit work on Friday. By that time the repair of the pipe had been completed.

Before leaving the job the workmen placed, three feet from the hole, what are known as "Cantel Barricades," the board at the top of which bore on one side in large letters the word "CAUTION" and on the other diagonal stripes. The testimony is in conflict as to whether there were two, three or four barricades. The men also piled dirt two feet high and two feet distant from the hole. According to Mrs. Bosin, mother of the plaintiff, the dirt was piled all the way around the hole; but Harvey Scott, Manager of the Defendant Sanitary District, testified it was only along its westerly side. Mixed with the dirt was what is referred to as "clay stone."

It was conceded that the defendants could have placed a piece of plywood over the hole large enough to cover it.

On Saturday, April twenty-third, late in the afternoon, Mrs. Bosin and her children visited her friend, Mrs. Salvesen, who lived on Schroeder Street. The hole was in front of the driveway of the Salvesen house. Gregory went out of doors to play with other children and about an hour later, according to Mrs. Bosin's testimony, several children came running to the door of the Salvesen house shouting "Greg's in the

hole" and someone shouted "Greg fell in." Clarence D. Connelly, father of some of the other children, ran to the hole and pulled Gregory out of it. He had no difficulty because of the barricades in lying down by the hole for the purpose of effecting the rescue.

Gregory sustained a severe cut on the forehead, which left a scar, and other injuries.

■ *Pocholec v. Giustina et al*, 224 Or 245, 355 P2d 1104, was a case of a trespassing child who fell into the defendant's log pond and drowned. We there approved as the law of this state Dean Prosser's summarization set forth in Prosser, "Trespassing Children," 47 Calif L Rev 427, and which has been substantially adopted by the American Law Institute in 2 Restatement of Torts 2d, § 339, as follows:

> "A possessor of land is subject to liability for physical harm to children trespassing thereon caused by an artificial condition upon the land if
>
> "(a) the place where the condition exists is one upon which the possessor knows or has reason to know that children are likely to trespass, and
>
> "(b) the condition is one of which the possessor knows or has reason to know and which he realizes or should realize will involve an unreasonable risk of death or serious bodily harm to such children, and
>
> "(c) the children because of their youth do not discover the condition or realize the risk involved in intermeddling with it or in coming within the area made dangerous by it, and
>
> "(d) the utility to the possessor of maintaining the condition and the burden of eliminating the danger are slight as compared with the risk to children involved, and
>
> "(e) the possessor fails to exercise reasonable care to eliminate the danger or otherwise to protect the children."

The rule applies generally to children whether trespassers or not, as explained in the *Pocholec* case, 224 Or at 251, and directly held in *Summers v. Grant Park Baptist Ch.*, 243 Or 362, 364, 413 P2d 611. As stated by Dean Prosser in the article above referred to (47 Calif L Rev at 432): "[C]hild trespasser law is merely ordinary negligence law, and the fact that the child is a trespasser merely one fact to be taken into account. with others, in determining the defendant's duty, and the care required of him."

In *Summers v. Grant Park Baptist Ch.*, supra, we held that the defendant was not charged with the duty of guarding a concrete light well, a part of a church building, with a grating in order to protect children in the churchground at the invitation of the defendant. The evidence showed that the plaintiff, a five-year-old girl, climbed upon the railing surrounding the well and fell to the bottom. The grounds of the decision were that the condition did not involve an unreasonable risk of bodily harm to children, that children appreciate the risk in playing on a railing such as that surrounding the light well and that it would be an intolerable burden on the landowner to require a guard at the light well which would prevent children from climbing to a precipitous place and falling off.

The defendants cite this case, but we think it distinguishable. The light well was a permanent feature of the building guarded by a railing in the usual way. The danger was created by the child herself when she climbed upon the railing. In that respect the *Summers* case resembles *Hamilton v. City of Detroit*, 105 Mich 514, 63 NW 511 (1895), relied on by the defendants. While the plaintiff in that case, a five-year-old boy, fell into a sewer trench, the fall came after the boy

had climbed to a platform some five or six feet above the street level and was playing with a car used in the work of constructing the sewer. The part of the street where the work was in progress had been closed against travel and in these circumstances it was held that the defendant was not liable for the injury to the child, the court saying: "The injury cannot, therefore, be said to have resulted from a defective condition of the street, or from a failure to guard the excavation against injury to persons using the highway." 105 Mich at 515. The decision seems actually to turn on a question of causation.

Some courts take the view that, as stated in Prosser on Torts (3d ed) 380: "* * * [T]he possessor is free to rely upon the assumption that any child of sufficient age to be allowed at large by his parents, and so to be at all likely to trespass, will appreciate the danger and avoid it, * * *." Among the perils to which this rigid rule has been applied, the author continues, are those of drowning in water, falling from a height or into an excavation. See cases collected in Annotation, 16 ALR3d 25, 102, § 11 (a). We gave careful consideration to this theory in *Pocholec v. Giustina,* supra, and rejected it, saying: "The real question for decision is the unreasonableness of the risk created, which will depend upon a variety of factors." 224 Or at 258. We further said: "It is for the jury to decide whether the landowner has met the minimum standard of care required for immunity from liability." Idem at 261.

It was not meant, of course, that every case must be submitted to a jury. Each case must be decided on its particular facts. In some the courts, in denying or restricting liability, have stressed the beneficial nature of the work involved and the difficulty

of completely safeguarding it against injuries to children. See *Powell v. Ligon,* 334 Pa 250, 5 A2d 373; *Johnson v. City of New York,* 208 NY 77, 101 NE 691, 46 LRA NS 462. Thus, it was said in *Powell v. Ligon,* supra, 334 Pa at 256:

> "* * * But where the condition alleged to be attractive is incident to the normal operations of the possessor's business and where the cost and burden of providing safeguards for children would unduly hinder, if not prevent, the conduct of necessary and highly beneficial enterprises such as that in the present case, there is no warrant in the law for requiring the possessor to take such precautions to protect trespassing children: (Citing authorities).
>
> "In the instant case defendants and all others engaged in like business must in the normal course of their business excavate numerous long ditches. To require them to fence in all such areas or to take other precautions to protect trespassers would involve a prohibitive expense and would unduly impede them in the efficient carrying out of their work. The imposition of such an impracticable burden is not warranted; * * *."

Similar views are expressed in *Johnson v. City of New York,* supra, 208 NY at 81-82. This case is unlike those cited, and their reasoning has no application to a case of a hole in the street eight by three feet in dimension which, after the repairing of the pipe for which the hole was dug has been completed, is left uncovered over the week end.

The reasoning of the *Pocholec* case constrains us to hold that the court erred in granting a nonsuit. In applying the rule of the Restatement we are required to determine whether the evidence shows that the excavation in the street involved, not merely a risk, but an unreasonable risk, of serious bodily harm to

young children, whether the defendants knew or had reason to know and realized or should have realized that such risk was involved, and to weigh the utility of maintaining the condition as it existed at the time of the accident against the burden of eliminating the danger.

■■ These are all questions which, as it seems to us, could properly have been submitted to the jury. Considering the propensities of children to intermeddle —to investigate the novel and the unknown—it might well be found that this hole in the street, partially, but, so far as children were concerned, inadequately guarded, was pregnant with risk of injury to a boy four and one-half years old, and of serious injury because a portion of the pipe was left exposed. Certainly we would not be justified in finding as a matter of law that a child that age would or should know and appreciate the danger. See *Harris v. Montes-Williams Co.*, 11 NJ 559, 95 A2d 388; *Beaston v. Julian, Inc.*, 49 Del 521, 120 A2d 317. The defendants knew that there were children in the area and it would not be unreasonable to find as a fact that they had reason to know and should have realized the danger to which such children were exposed by the excavation. Finally, in view of the simple and inexpensive means at hand of eliminating the danger either by covering the hole, or by throwing the dirt back into it, the work having been completed, it might well be concluded that "the utility to the possessor of maintaining the condition" was not so great as to absolve the defendants from the charge of negligence in failing to use those means. This would be also a factor in determining whether the risk of serious bodily injury to children was unreasonable.

■ It has been suggested that it was the responsibil-

ity of the plaintiff's parents, not of the defendants, to take care that the child would not encounter the danger. There is some authority for that suggestion: *Davis v. Goodrich*, 171 Cal App 2d 92, 98, 340 P2d 48; but we think the preferable view is that expressed by Dean Prosser, 47 Calif L Rev, supra, at 429: "While it is true that his [the child's] parents or guardians are charged with the duty of looking after him, it is obviously neither customary nor practicable for them to follow him around with a keeper, or chain him to the bedpost. If he is to be protected at all, the person who can do it with the least inconvenience is the one upon whose land he strays." Similarly, Chief Justice Gibson, speaking for the court in *King v. Lennen*, 53 Cal 2d 340, 344, 1 Cal Rptr 665, 348 P2d 98 (cited with approval in *Pocholec*, 224 Or at 259), said:

> "* * * Even very young children cannot always be kept under the supervision of their parents, and the question whether a parent in a wrongful death case was guilty of contributory negligence in permitting his young child to play unattended near the defendant's property will ordinarily be for the trier of fact."

The question here is not one of contributory negligence of the parents, but relates to the foreseeability by the defendants of harm to the child and, while the negligence, if any, of the parents may be relevant upon that question, it is only one of the factors affecting it. It was for the jury to say whether the defendants could rightly assume that the parents of the plaintiff would protect him from such an injury as befell him.

■ Defendants argue that there is no evidence of causation, that children were playing with the plaintiff, that any of them could have accidentally or intentionally pushed the plaintiff into the excavation, or

that he may have jumped into it, and the jury could only speculate as to the cause. We do not agree. The evidence, which was received without objection, is that "Greg fell in".

■■■■ In this connection we notice, in view of a new trial, an assignment of error directed to the exclusion of evidence relating to the cause of the accident. The witness Connelly was not permitted over objection to state what his five-year-old son David, one of the children playing with the plaintiff, said shortly after the plaintiff was pulled out of the hole by Mr. Connelly. The testimony would have been that Connelly asked the children what had happened and David said: "He was standing back on the dirt pile and Greg was standing on a rock and the rock slipped and in went Greg." The objection was on the ground of hearsay; the plaintiff urges that the testimony was admissible under the exception to the rule regarding "spontaneous declarations" or "excited utterances." We do not agree with the defendants' contention that the statement was inadmissible because it was made by a bystander and not by the plaintiff himself. McCormick on Evidence 580, § 272. We think, however, that in passing on such a question "the trial judge must be given considerable lee-way of decision." Idem. See, also, VI Wigmore on Evidence (3d ed) 154, § 1750.[1] In the case before us the statement of the boy was elicited by an inquiry. This of itself is not conclusive against admissibility of the evidence, but it is a factor for consideration. McCormick, supra, 581. See, also, cases collected in An-

---

[1] Wigmore says: "They [Supreme Courts] should, if they are able, lift themselves sensibly to the even greater height of leaving the application of the principle absolutely to the *determination of the trial Court.*" We are not able.

notations, 53 ALR2d 1245, 1278-1279, 163 ALR 15, 167-171; 29 Am Jur 2d 784, Evidence § 718. The record indicates that the trial judge did consider it. We find no abuse of discretion in the ruling.

The judgment is reversed and the cause remanded for further proceedings in conformity with this opinion.

SLOAN, J., concurring.

I concur in this opinion except for the implied approval of the language in the quotation from *Powell et al v. Ligon et al*, 1939, 334 Pa 250, 5 A2d 373. I cannot agree with the quoted language and it is not essential to the decision in this case.