Argued September 13, affirmed October 12, 1960

# POCHOLEC *v.* GIUSTINA ET AL

## 355 P. 2d 1104

*James A. Pearson* argued the cause for appellant. On the briefs were McCoy & Pearson, Eugene.

*Windsor Calkins* argued the cause for respondents. On the brief were Calkins & Calkins, Eugene.

Before McAllister, Chief Justice, and Warner, Sloan, O'Connell and Howell, Justices.

O'CONNELL, J.

This is an action to recover damages for the death of Ronnie Pocholec, a nine-year old boy, who drowned in the defendant's log pond. The plaintiff, administrator of the decedent's estate, appeals from a judgment entered upon a verdict for the defendant.

The defendant maintains a log pond at Springfield, Oregon, on land in its possession and under its control. The pond, which covers approximately 20 acres, was constructed by defendant in 1951. It is used as a storage place for logs which are eventually cut into lumber at defendant's mill in Eugene. The pond is enclosed by a dike; the surface is approximately six

feet higher than the surrounding ground. A railroad track enters the defendant's property at the west edge of the pond, forming a siding along which railroad cars are brought for loading and reloading. A roadway runs along the other three sides of the pond. Log trucks are unloaded and loaded from this roadway. The McKenzie Highway is about 200 feet to the north of the pond. There is a city street about 90 feet east of the pond. That street runs through a residential area.

The defendant posted warning signs on the four corners of the pond. The signs read, "Danger, Keep Out, Private Property." However, probably only one of the signs was up at the time of the accident. The defendant did not maintain a fence around the pond or employ guards to keep children from using it. Defendant's employees had knowledge that children frequently trespassed upon the pond and the land around it. The employees were instructed to tell trespassing children to get off the premises and this was done on a number of occasions. There was evidence that on several occasions children, while playing on the logs in the pond, had fallen into the water and had to be rescued.

On the day of the accident Ronnie Pocholec had gone to the pond with another boy for the purpose of catching frogs. Ronnie went out onto the logs in the pond, apparently to find a frog. He fell into the water and when he came to the surface the logs had drifted out of his reach. He drowned.

Plaintiff's complaint set forth in substance the facts recited above. Defendant's answer was a general denial coupled with the following separate answer and defense:

"That at the time of the accident plaintiff's

decedent was aware of the danger alleged. That plaintiff's decedent assumed the risk of said danger in walking out upon the floating logs and failed to use reasonable care in proceeding out into said pond on said logs.

"That plaintiff's decedent was thereby contributorily negligent, proximately causing his death."

Plaintiff demurred to the separate answer on the ground that it did not constitute a defense. The demurrer was overruled and plaintiff filed his reply. The jury returned a verdict for the defendant. The trial court entered judgment and plaintiff appeals.

Plaintiff's first and third assignments of error may be treated together. Under these assignments it is contended that the defenses of assumption of risk and contributory negligence are not available to the defendant in this case. It is first pointed out that the trial judge concluded that the pond in question was an "attractive nuisance" as a matter of law, and that the jury was so instructed. This finding and instruction, it is argued, conclusively establishes that the plaintiff's decedent did not perceive the danger because a condition cannot be regarded as an "attractive nuisance" unless the injured child fails to perceive the risk. This being so, it would be inconsistent, says the plaintiff, to allow the jury to find that the decedent child was contributorily negligent or that he had assumed the risk because, he contends, both of such defenses are predicated upon the plaintiff's perception of the risk.

■ The inconsistency exists only if it is assumed that the court, in describing the condition as an "attractive nuisance," intended to embrace within the definition of that term all of the elements establishing the defendant's liability, including the child's lack of

appreciation of the risk of the danger. It is not quite clear from the trial judge's treatment of the matter what meaning he intended to attach to the term "attractive nuisance." It seems, however, that he merely meant to say that the pond in question was a dangerous condition, attractive to children generally, but that he was leaving the question of the defendant's liability to depend upon the jury's determination of whether Ronnie Pocholec realized the risk involved in playing upon the pond. If this was all that was meant, there would have been no error in letting the jury decide that plaintiff's decedent fully realized the risk and knowingly encountered it, or that he was negligent in some particular in subjecting himself to a danger which he should have realized.

The alleged inconsistency relied upon by the plaintiff vanishes if the so-called "doctrine of attractive nuisance" is looked upon, not as a separate and self-contained category of tort law, but simply as a part of the law of negligence generally.

 After a careful study of the matter, we are convinced that the proper solution of the legal problems arising out of the trespass of children must rest upon the same general principles of liability as are involved in any other case in which a defendant creates an unreasonable risk of harm to a child. The Restatement of Torts, § 339 so considers this area of the law.[1] The views there expressed are adopted, with some re-

---

[1] "§ 339. *Artificial Conditions Highly Dangerous to Trespassing Children.*

"A possessor of land is subject to liability for bodily harm to young children trespassing thereon caused by a structure or other artificial condition which he maintains upon the land, if

"(a) the place where the condition is maintained is one upon which the possessor knows or should know that such children are likely to trespass, and

"(b) the condition is one of which the possessor knows or should know and which he realizes or should realize as involving an

finements, in an excellent treatment of the entire matter by Dean Prosser in a recent article. Prosser, Trespassing Children, 47 Calif L Rev 427 (1959). He summarizes the law as follows, at page 469:

> "A possessor of land or a chattel is subject to liability for physical harm to children trespassing thereon, caused by a condition of the land or chattel, if
>
> "(a) the place where the condition exists is one upon which the possessor knows or has reason to know that children are likely to trespass, and
>
> "(b) the condition is one of which the possessor knows or has reason to know, and which he realizes or should realize will involve an unreasonable risk of death or serious bodily harm to such children, and
>
> "(c) the children because of their youth do not discover the conditions or realize the risk involved in intermeddling in it or in coming within the area made dangerous by it, and
>
> "(d) the utility of maintaining the condition and the burden of eliminating the danger are slight as compared with the risk to children involved, and
>
> "(e) the possessor fails to exercise reasonable care to eliminate the danger or otherwise to protect the children."

This statement represents our view of the law and we adopt it. Consistent with this view the jury is entitled to find that although the defendant created an unrea-

---

unreasonable risk of death or serious bodily harm to such children, and

"(c) the children because of their youth do not discover the condition or realize the risk involved in intermeddling in it or in coming within the area made dangerous by it, and

"(d) the utility to the possessor of maintaining the condition is slight as compared to the risk to young children involved thereon."

sonable risk of harm to those children who, as a class do not ordinarily realize the risk involved in exposing themselves to the dangerous condition, nevertheless, the particular child for whose injury recovery is sought may be barred from recovery, either because he fully realized the risk and consciously encountered it or because, while he may not have realized the danger involved in exposing himself to the condition, he failed to exercise the care which children of his age, intelligence and experience are required to exercise for their own protection. And, where a child understands some but not all of the dangers involved, this may be found to be sufficient to have alerted him to discover the other hazards, with the consequence that his failure to do so would constitute a failure to exercise due care. The duty which defendant owes to trespassing children is phrased objectively in terms of his duty to children as a class; the obligation which a child has to protect himself is his own individual obligation, judged by a partially subjective standard of conduct. 2 Harper and James, Torts, § 16.8, p 924 (1956); Prosser Torts (2nd ed), p 128 (1955). There is, therefore, no disharmony in permitting the jury to find first that defendant was negligent as determined by the above adopted tests taken from Dean Prosser's article, and yet find that the particular child injured had, because of his own fault, forfeited his right to recover. If we were to say that contributory negligence was not available to the defendant in the present case, logically we would have to exclude the defense in every negligence case in which a child was the plaintiff.

The view we have adopted has not received a universal endorsement by the courts. In *Larnel Builders, Inc. v. Martin,* 110 So2d 649 (Fla App 1959), it was held that the theory of contributory negligence is in-

compatible with the attractive nuisance doctrine. The court said, at page 650:

"The concepts are closely related but, in the final analysis, irreconcilable. One of the conditions essential to operation of the attractive nuisance doctrine is that the injured party *because of the incapacities of age*, etc., does not in fact 'realize the risk involved in intermeddling' or coming within a hazardous area. By proceeding upon this theory then, as did the plaintiff in this case, one assumes the burden of showing that the individual involved was of such age and incapacities, as a child of 'tender years,' that he would not be held accountable for his own negligence or lack of judgment."

And in *Cicero State Bank v. Dolese & Shepard Co.*, 298 Ill App 290, 294, 18 NE2d 574 (1939), the court stated that "the attractive nuisance doctrine rests upon the proposition that it applies to children of such tender years that they cannot be guilty of contributory negligence as a matter of law." (However, the court went on to make a contradictory statement and approved an instruction on contributory negligence as an available defense.)

There is ample authority for the position we have taken. In 2 Harper and James, § 27.5, p 1454, note 54 (1956), it is said:

"* * * Of course, even if the child is held to be within the attractive nuisance doctrine, the question of his contributory negligence, in light of all relevant circumstances, will have to be decided. But that question is different from the one of whether or not the protection of the attractive nuisance doctrine should be available to him."

And further, at page 1455, note 57:

"The question of the child's contributory negligence is a separate problem which must be carefully

distinguished from that of the land occupier's duty * * *. Unfortunately the issues are often confused. See note 54, supra. Where contributory negligence bars recovery anyway, the confusion does not affect the result. But in cases in which the plaintiff may not be contributorily negligent, it would be important to keep the issues distinct."

See also, discussion in note, Torts: Recent Developments in California Law Concerning Landowner Liability to Trespassing Children, 48 Calif L Rev 342, 354, note 39 (1960). And in numerous cases it has been held that contributory negligence is an available defense in "attractive nuisance" cases. For an extended discussion see the recent case of *Nechodomu v. Lindstrom*, 273 Wis 313, 77 NW2d 707, rehearing denied 78 NW2d 417 (1956), which held contributory negligence to be a proper defense. *Nashville Lumber Co. v. Busbee*, 100 Ark 76, 139 SW 301 (1911), *Courtell v. McEachen*, 51 Cal2d 448, 334 P2d 870 (1959); *City of Pekin v. McMahon*, 154 Ill 141, 53 Ill App 189, 39 NE 484 (1895); *Price v. Atchison Water Co.*, 58 Kan 551, 50 P 450 (1897); *Van Alst v. Kansas City*, 239 Mo App 346, 186 SW2d 762 (1949); *Hoff v. Natural Refining Products Co.*, 38 N J Super 222, 118 A2d 714 (App Div 1955); *Britten v. City of Eau Claire*, 260 Wis 382, 51 NW2d 30 (1952).

■ Although in the colloquy with counsel, the trial judge referred to the pond in question as an "attractive nuisance" as a matter of law, the case was submitted to the jury just as any other negligence case is submitted, the instructions calling for a determination of whether defendant was negligent and whether plaintiff was contributorily negligent. This is the proper method of submitting to the jury the question of defendant's liability.

If the jury had not been given the instruction on contributory negligence, there would have been nothing in the instructions relating to the plaintiff's perception of the risk. Certainly the defendant was entitled to have the jury put its collective mind to that question and to determine if plaintiff's decedent did in fact perceive the risk or if he did not, whether he was chargeable with having perceived it. And this is so regardless of whether the question of plaintiff's perception is regarded as bearing upon the scope of defendant's duty or as constituting a defense by way of avoidance, i.e., contributory negligence. Prosser, Trespassing Children, 47 Calif L Rev 427, 462 (1959).

■ With respect to the question of assumption of risk, it is doubtful whether the defendant's answer or the instructions presented the defense of assumption of risk. The reference to assumption of risk in the answer, which is set out above, appears to have been intended as nothing more than a description of contributory negligence. It is clear that the trial judge considered the answer as presenting only the defense of contributory negligence. This is evident from the manner in which the case was submitted to the jury. The court instructed the jury that "[a]ctually, what the case amounts to, the plaintiff charges the defendants with negligence, which the defendant has denied and the defendants have charged the plantiff's decedent with contributory negligence, which the plaintiff has denied." Other instructions were to the same effect. But, even assuming that the defense was raised, still plaintiff cannot here complain of the disposition made below. If the jury had found that plaintiff's decedent did fully realize the risk and consciously proceeded to encounter the danger despite such appreciation, then defendant simply would have owed no duty

to plaintiff's decedent. Fleming, Torts, p 231 (1957); 2 Harper and James, Torts, § 21.1, p 1162 (1956); Prosser, Torts, (2nd ed) p 303 (1955). The crucial question then, is: did plaintiff's decedent fully realize the danger? This was a question of fact for the jury and the plaintiff has no right to complain that the jury had an opportunity to pass upon it. We hold that there was no error in overruling the demurrer to defendant's answer and in instructing the jury on contributory negligence.

■ Implicit in the disposition of the foregoing assignments of error is our acceptance of the view that a landowner may be liable to trespassing children for injuries caused by reason of the maintenance of an artificial pond. Some courts have held that certain conditions regarded as creating "common hazards" can not be regarded as "attractive nuisances" and that, therefore, the special rule relating to the liability of landowners to trespassing children can not apply. *Hayko v. Colorado & Utah Coal Co.*, 77 Colo 143, 235 P 373, 39 ALR 482 (1925); *Goss v. Shawnee Post No. 3204, V.F.W. of U.S.*, 265 SW2d 799 (Ky 1954); *Brown v. Salt Lake City*, 33 Utah 222, 93 P 570 (1908); *Heva v. Seattle School Dist. No. 1*, 110 Wash 668, 188 P 776, 9 ALR 267 (1920). The applicability of that special rule to ponds and other conditions as, e.g., fire or high places, which duplicate natural conditions (which it is by some assumed a child can be expected to understand and, therefore, appreciate the risk) has presented a most bothersome question. In an effort to relieve the landowner from what is regarded by some as "an exceptionally harsh rule of liability," (*Whalen v. Streshley*, 205 Cal 78, 269 P 928, 929, 60 ALR 445 (1928)), it has been held that, as a matter of law, certain conditions are not

uncommon hazards and that trespassing children can be expected to understand the risk involved in meddling with them. This effort to recognize certain categories of conditions has proved unworkable or, as Prosser expresses it, "impossible to carry through." He points out, "While it is evident that there must be some aggravated danger to the child, greater than the ordinary risks of his daily life, it is equally clear that this can not be reduced to a formula." Prosser, Trespassing Children, 47 Calif L Rev 427, 454 (1959). The real question for decision is the unreasonableness of the risk created, which will depend upon a variety of factors. These factors are well described in the following passage taken from *Lone Star Gas Co. v. Parsons,* 159 Okla 52, 56, 14 P2d 369, 373 (1932), and which is quoted with praise in Prosser's article:

> "So in these cases we have the question of how uncommon is the instrumentality; how unusually dangerous it is; how attractive is it; what probability is there of children coming in contact with it; whether the probability is localized so that harm can be avoided, or is there merely a high probability that at some time and in some place children will come in contact with it, with nothing to indicate when or where the contact will come; how feasible is it to avoid danger of harm; how great would be the burden of avoiding or lessening danger of harm, and the effect of imposing such duty. And one outstanding inquiry that is often given scant consideration by the judges is the apparent intelligence of the child, his intelligent consciousness of the circumstances, and that he had reached the age where he would reasonably be expected not to tamper because of his appreciation of danger or appreciation of his want of right to tamper, so that no duty to protect him could reasonably be imposed."

The unworkability of fixed categories of certain physical hazards and the attempt to fit the various conditions into them is demonstrated in the recent development of the case law on this subject in our sister state of California. In a series of cases, the California courts were called upon to determine the liability of possessors of land for injury or death arising out of the maintenance of private swimming pools. At first it was held that artificial bodies of water, such as swimming pools, were common hazards and that children could be expected to understand the risk created. Defendant relies upon these cases. However, in a recent case, *King v. Lennen,* 53 Cal 2d 340, 1 Cal Rep 665, 348 P2d 98 (1959), the California Supreme Court overruled its earlier cases and accepted the view announced in the Restatement, making the defendant's liability rest upon unreasonableness of the risk created. The reason for the shift in view is explained in the following quotation:

"As we explained in Garcia v. Soogian, 52 Cal2d 110, 338 P2d 433, 435, the question of liability must be decided in the light of all circumstances and not by arbitrarily placing cases in rigid categories on the basis of the type of condition involved. We also pointed out in that case * * * that the circumstance that a condition giving rise to injury is common in character does not necessarily exclude liability, that the ability to appreciate danger varies with the age and mental capacity of the child, and that what is important is not whether conditions are common in character but whether their dangers are fully understood by children * * *. [W]e held that a young trespassing child who was injured by a common condition, namely, fire or embers, might recover under the law applicable to trespassing children and that it was for the trier of fact to determine whether the child was injured by a risk not obvious to her. While a child is more

likely to be aware of a dangerous condition which is common than of one which is unusual * * *, it seems obvious that the common nature of a danger, such as that of drowning in a pool, should not bar relief if the child is too young to realize the danger * * *.

"A number of cases decided before Garcia v. Soogian * * * reasoned that the 'attractive nuisance' doctrine does not apply unless the dangerous condition is uncommon and different from natural conditions which exist everywhere and that a body of water, natural or artificial, is a common danger and therefore, as a matter of law, will not subject the possessor to liability for the drowning of a child, even if that child is too young to appreciate the danger * * *. This reasoning is inconsistent with the Restatement rule, and the cases cited above are disapproved insofar as their language or holdings are contrary to the views expressed herein." 348 P2d at 100.

Other courts have likewise shifted from the position that conditions of hazard to children may be catalogued to the theory that the character of the dangerous condition on defendant's premises is merely one factor which is to be considered along with other factors in determining whether he is negligent. *Turpan v. Merriman,* 57 N J Super 590, 155 A2d 266, 269, 158 A2d 450 (1959). And see, *Arkansas Valley Trust Co. v. McIlroy,* 97 Ark 160, 133 SW 816, 819, 141 SW 196 (1911); *Weber v. St. Anthony Falls Water Power Co.,* 214 Minn 1, 7 NW2d 339 (1942).

■ We accept the latter view. We are not unmindful of the significance of our choice, particularly as it affects the use of premises for industrial purposes such as the use involved in the case at bar. We believe, however, that the landowner's liability in this type of case should be determined by the same general

principles of negligence law as those applicable in other cases involving the use of land, modified, of course, to fit within the rule set forth above which defines the special duty of the landowner to trespassing children. It is for the jury to decide whether the landowner has met the minimum standard of care required for immunity from liability. In doing so, they are required to weigh the utility of the defendant's use and maintenance of his premises and the burden of eliminating the danger against the risk of harm to children. That this is not merely a theoretical formula seems evident from the jury's verdict for the defendant in the case at bar.

In passing we note that the trial court instructed the jury that plaintiff's decedent was an "invitee." This is inaccurate. Plaintiff's decedent was a trespasser; he was a trespassing child. A possessor of land has the duty to an invitee to inspect his premises for possible defects. Prosser, Torts, (2nd ed) p 459 (1955). There is no such duty to trespassing children. Prosser, Trespassing Children, 47 Calif L Rev 427, 451 (1959). Contra: *Menneti v. Evans Const. Co.*, 259 F2d 367 (3rd Cir 1958), noted in 20 Ohio State L J 566 (1959), Extension of Attractive Nuisance Doctrine to Reasonably Foreseeable Dangerous Conditions.

Error is assigned for the court's refusal to permit plaintiff to introduce evidence of the value of defendant's land, the cost of constructing the pond, and the cost of fencing it. The purpose of this proferred evidence was to support the contention that "it was feasible and reasonable to fence the property and that the cost of such fencing was reasonable and not disproportionate to the value of the land plus the improvements thereon." As we have already indicated, the utility to the defendant in maintaining the condi-

tion and the burden of eliminating the danger must be slight in comparison to the risk to young children before liability can be imposed. The cost of fencing is relevant for the purpose of showing one arguably feasible method of removing or minimizing the danger. However, a fence may cost very little and yet be infeasible in the particular use of the land to which defendant is putting it. If railroad cars and logging trucks are moving to and from the pond which would require a fence to be open at various entry and exit points, it is possible that the fence would not materially reduce the danger, and, therefore, would not be feasible, considering defendant's use of the land. When objection to the evidence as to the cost of fencing was made, plaintiff's counsel stated his position as follows: "It is our contention that it is a question of feasibility as to whether the pond could be fenced and that this evidence is material and relevant." To this the trial judge responded, "Well, if that's the theory, you may ask the witness, he being in that business, if it is feasible to fence the pond, but going into the cost of it would be trying a collateral issue at this time. If counsel for defendant wants to go into the matter, he may do so upon cross examination, but on direct examination it can't be done. I will permit him to answer this one question." Thereupon plaintiff interrogated his witness as follows:

"Q Mr. Taylor, have you formed an opinion as to the feasibility of putting a steel fence, steel cyclone fence, around the outside perimeter of the Giustina Company millpond property at 32nd St., Springfield, Oregon?

"A Yes.

"Q What is your opinion as to the feasibility of such a structure?

"MR. CALKINS: If the Court please, we would object to the question and the answer on the basis that the witness would not be qualified to say what the feasibility was with reference to the operation of the log pond.

"THE COURT: Well, of course this is a case of negligence. I will overrule the objection. You may answer but don't go into the cost or anything of that kind.

"A Yes, I believe it could be fenced feasibly.

"MR. PEARSON: Q Mr. Taylor, how wide is it possible to make gates in a steel fence?

"A Well, gates can be made in about any size, depending on the type of gate.

"Q Now, there has been testimony here, Mr. Taylor, that the spur track, the spur line railroad track, entering the property at the southwest corner and running northerly across the west line of the property. Have you had any experience in planning the erection of gates over a spur railroad track?

"A Yes, I have.

"THE COURT: Well, isn't that anticipating a defense?

"MR. PEARSON: Well, Your Honor, it goes back to the question as to feasibility whether it is feasible to put a fence around the entire perimeter of that pond, and I feel that the evidence with the railroad track in there that he should be able to say if it is feasible to run a fence across that railroad track.

"THE COURT: Well, the testimony in this case is all pertaining to the area west of 32nd street, isn't it?

"MR. PEARSON: Well, the pond is west of 32nd. St. and extends to the west over the spur railroad track.

"THE COURT: Where is the residential area?

"MR. PEARSON: The residential area would be to the east of 32nd St. We are referring at this point to the area on the west side of the pond.

"THE COURT: Well, I think that testimony would be a little far-fetched because all your testimony here in the case, as far as the Court understands, has been children playing from the residential area east of 32nd St. and playing along the west and a portion of the north side of the pond.

"MR. PEARSON: That's correct, Your Honor, but I feel that the evidence has shown to date that there is access to the pond from all sides. I think a number of witnesses have testified to that fact. That children or anyone for that matter could approach the pond from either side, although it is more likely they would approach from the east side. I think there were at least two witnesses who said that it was approachable from either side.

"THE COURT: Well, I think I will confine the witness answer to the one question, as to whether or not in his opinion it was feasible to fence the pond. I think he has answered the question."

■ There was obviously, confusion in the use of the term "feasibility" by court and counsel. Clearly, the witness Taylor, who was salesman for a fence company, was not qualified to testify as to the feasibility of operating a log pond encircled by a fence. He was qualified to testify as to the cost of erecting a fence on such property and, if he were acquainted with the premises, to testify whether there would be any obstacles involved in constructing such a fence. The question is whether the error in precluding him from testifying as to cost was prejudicial. The basic proposition requiring proof was the feasibility of the *operation of the log pond* with a fence surrounding it. The only competent evidence offered by plaintiff on that proposition was the preliminary matter of cost of

erection. As we have already stated, if Taylor's testimony as to feasibility was intended to prove that a fenced log pond could still be operated as a part of defendant's sawmill, he was not qualified to testify. Thus, we have no competent evidence whatsoever directly on the point of feasibility of operation. Plaintiff could have called witnesses to establish feasibility in this sense. He did not do so. Even though the evidence of the *cost* of fencing the pond had been admitted, there would have been no basis upon which the jury could have concluded that the defendant could continue his practicable use of the log pond if a fence had surrounded it. We hold that the exclusion of the evidence relating to the cost of constructing the fence was error, but that for the reasons given, the error was not prejudicial.

■ Plaintiff contends the trial court erred in refusing to give his requested instruction to the effect that proof of the decedent's savings and earnings was not required in order to permit recovery. The instructions given abundantly indicated that the jury could grant recovery on the basis of the evidence which had been submitted.

The judgment of the lower court is affirmed.