Argued September 24, affirmed November 16, 1970

HUTCHISON, *Appellant, v.* TOEWS ET AL,
*Respondents.*
476 P2d 811

*E. R. Bashaw,* Medford, argued the cause for appellant. With him on the briefs were Collins, Redden, Ferris and Velure, Medford.

*R. A. Stark*, Medford, argued the cause for respondent Toews. On the brief was Paul W. Haviland, Medford.

*William V. Deatherage*, Medford, argued the cause for respondent School District. With him on the brief were Frohnmayer & Deatherage, Medford.

Before SCHWAB, Chief Judge, and LANGTRY and BRANCHFIELD, Judges.

LANGTRY, J.

Plaintiff appeals from a judgment of involuntary nonsuit, entered on motion of both defendants at the conclusion of the plaintiff's case.

Plaintiff and his friend, Phillip Brown, both 15 years old, attempted to shoot a homemade pipe cannon which exploded, injuring plaintiff's hands. They had made the explosive charge by mixing potassium chlorate and powdered sugar.

Brown, as plaintiff's witness, testified that he and the plaintiff had "badgered" defendant Toews, the chemistry teacher at Phoenix High School, for potassium chlorate to use in fireworks experimentation. He said they had asked Mr. Toews for the material about a dozen times. The plaintiff said five or six times. Finally, Mr. Toews had given them some powdered potassium chlorate, which they put in a baby food jar. A day or two later, when Mr. Toews left the separate chemical storage room unattended while he stepped into the adjoining chemistry classroom, Brown took, without Mr. Toews' knowledge or permission, some crystalline potassium chlorate also stored there. Brown positively identified this crystalline potassium chlorate as the substance used in the

explosion. He was the one who mixed the ingredients. The plaintiff equivocated, first indicating that the powdered substance was what was used, but on cross-examination he said, "It looked like crystal." Brown waited approximately two years after the accident before he revealed to anyone that he had taken the crystalline substance and that it had caused the explosion. The plaintiff did not reveal that he knew the crystalline substance had been taken until after Brown's disclosure of the true facts. The injury occurred in November 1965. Plaintiff commenced this action for damages against defendant Toews only in June 1966, and filed an amended complaint in August 1967. In these complaints, plaintiff alleged that defendant Toews "supplied" the potassium chlorate to him.

After disclosure of the taking of the crystalline substance, a second amended complaint was filed in which the plaintiff joined the school district as a defendant and alleged, *inter alia*, that "the defendants supplied and made available" the potassium chlorate.

The trial judge briefly indicated in his remarks preceding the granting of the involuntary nonsuits that he thought there was a jury question as to which sample of the potassium chlorate was used in the explosion. Brown was plaintiff's witness and plaintiff vouches for his "credit." ORS 45.590. He positively identified the crystalline substance he took as the substance from which the explosive was made. The evidence indicates that the chemical property room was kept locked except when it was in use. We think it is questionable whether there was evidence of substantial causation against either defendant upon which liability could have been predicated, because it was not reason-

ably foreseeable that Brown would take the particular chemical which caused the injury. However, we will proceed upon the basis of the trial court's decision.

The affirmative defenses were contributory negligence and assumption of risk. It was upon these defenses that the nonsuit was granted. In his remarks the trial judge said:

> "* * * [T]wo young men went out for the avowed purpose of shooting off a cannon and fooling with explosives. They were aware—I think, taking all of the testimony together, they were fully aware that this was dangerous. Perhaps no one would anticipate that this thing would blow up in exactly the manner that it did, but still, when you're fooling with explosives there is an element of danger which you are assuming, and that element of danger is that someone is going to get hurt if extreme caution is not taken, and taking into consideration the testimony of the boys themselves from the witness stand, it's the feeling of the Court, and the Court will so find, that the Plaintiff did assume the risk, and the Court will grant your motion for nonsuit."

Prosser says:

> "* * * [T]he kind of contributory negligence which consists of voluntary exposure to a known danger, and so amounts to assumption of risk, is ordinarily a defense * * *." Prosser, Torts 539, § 78 (3rd ed 1964).

We think the evidence construed in the light most favorable to plaintiff (*Turner v. Jentzen*, 243 Or 427, 414 P2d 316 (1966)), justifies the judgment of the court. The boys had purchased from a mail order firm in Michigan a pamphlet which gave 100 formulas for explosives. Together, they built the cannon and conducted their experiments. They admitted that they

had looked at the warnings in the pamphlet. They had shown the pamphlet to defendant Toews, and he had cautioned them, and told them they should have supervision. He had declined their invitation to supervise them because of another commitment. Among other things, the pamphlet warned:

"* * * Some of the formulas listed in this booklet are very dangerous to make. Therefore, it is strongly suggested that the making of fireworks be left in the hands of the experienced.

"* * * * *

"When making any of these formulas, keep this point in mind, Potassium Chlorate is a powerful oxidizing agent and when mixed with any flamable [sic] substance * * * it can [be exploded by] impact or friction * * *."

Several of the formulas in the pamphlet, which was in evidence, called for the use of potassium chlorate and, without exception, these formulas contained the strongest warnings to be found among all of the formulas. The formula which the boys used was one labeled for "Powerful Rocket Fuel." It was not listed for cannon fuel. The formula noted it "is very powerful."

They had previously experimented with homemade gunpowder in the cannon and in doing so had used up all of their fuses. When they mixed and placed the charge of potassium chlorate and powdered sugar in the cannon, they put the head of a paper match into the fuse hole and tried to light the paper end of the match in order to have time to take cover before the explosion. When Brown tried to light the paper match, wind impeded him. On Brown's request, plaintiff held his hands around the fuse hole to shield it from the wind. The charge exploded, and the closed pipe end

"peeled like a banana." Plaintiff's hands were severely injured. The evidence is lengthy, but it is replete with statements from both of the boys that they knew the experiment conducted was dangerous. Plaintiff testified on cross-examination he knew "That you might get burned if you held onto it, or if you stood too close to it when it did shoot * * * that it might fly up or hit you in the face * * *."

In *Moore v. Order Minor Conventuals*, 267 F2d 296 (4th Cir 1959), which involved a child being injured when he conducted an unsupervised experiment in a chemistry laboratory, the court said:

"Moore contends, however, that a different situation prevails when the ignition of the explosive occurs at a time and in a manner which were not anticipated by him. The usual rules for the appraisal of conduct recognize no such distinction for, generally, the actor is held to be wanting in due care if he should have recognized that his course of conduct exposed himself, or others, to risk of harm, even though it be perfectly clear that he did not anticipate the particular way in which the injury occurred * * *." 267 F2d at 297.

Plaintiff testified he knew that the pamphlet said the formula was very powerful.

In *Nikkila v. Niemi*, 248 Or 594, 598, 433 P2d 825 (1968), a guest passenger automobile injury case involving alleged contributory negligence of a minor, the Oregon Supreme Court said:

"A party's youth is taken into consideration when judging whether or not he knew or should have known of the danger, but it does not excuse his embarking on a course of knowingly dangerous conduct."

The majority of the Court in that case (a 4 to 3 decision) quoted supporting language from *Pocholec v. Guistina et al*, 224 Or 245, 355 P2d 1104 (1960):

> " '* * * [T]he particular child for whose injury recovery is sought may be barred from recovery, either because he fully realized the risk and consciously encountered it or because, while he may not have realized the danger involved in exposing himself to the condition, he failed to exercise the care which children of his age, intelligence and experience are required to exercise for their own protection. * * *' 224 Or at 253." 248 Or at 598.

There are many cases involving tort liability of suppliers of explosives to children. No purpose is served by a detailed discussion of them here. We note that they usually turn on whether the plaintiff had or should have had knowledge and understanding so that he could have avoided the explosion. See *Moore v. Order Minor Conventuals*, supra; *E. I. Du Pont de Nemours & Co. v. Edgerton*, 231 F2d 430 (8th Cir 1956); *Bolar v. Maxwell Hardware Co.*, 205 Cal 396, 271 P2d 97, 60 ALR 429 (1928) (distinguished but not overruled in *Mastrangelo v. West Side U. H. School Dist.*, 2 Cal 2d 540, 42 P2d 634 (1935)); *Shields v. Costello*, 229 SW 411 (Mo 1921); *Wilhelm v. Board of Education of City of New York*, 16 App Div 2d 707, 227 NYS2d 791 (1962).

In the case at bar, the only reasonable conclusion from the evidence was that plaintiff had knowledge of the risk involved, and that he was contributorily negligent as a matter of law.

Affirmed.