Argued April 5, reversed and remanded September 28, 1972

KAROBLIS, *Appellant, v.* LIEBERT ET AL,
*Respondents.*

501 P2d 315

*Fred A. Granata,* Portland, argued the cause for appellant.

*James F. Spiekerman,* Portland, argued the cause for respondent.

Before O'CONNELL, Chief Justice, and McALLISTER, DENECKE, HOLMAN,[*] HOWELL, and BRYSON, Justices.

McALLISTER, J.

This is an action for damages for injuries sustained by Kim Karoblis, a four and one-half-year-old girl when she fell from a fire escape at defendants' apartment complex where Kim lived with her parents. The case was tried to the court without a jury. When plaintiff rested, defendants moved the court "to dismiss the case on the grounds that the plaintiff has failed to present sufficient evidence to entitle them to a judgment in their favor without any further evidence

---

[*] Holman, J., did not participate in this decision.

on my part that their evidence is insufficient to establish a case to which they would be entitled to a judgment."

After arguments on the motion, including a colloquy between court and counsel, the court said:

"And certainly, without any criticism intended, I doubt that there's any more—any more evidence that could have been produced on the part of the plaintiff—I just don't feel that they have established any negligence on the part of the defendants in this particular set of circumstances.

"Accordingly, I feel constrained to grant the motion for nonsuit. I feel that's what I must do in this case."

Thereafter the court entered a judgment of involuntary nonsuit against the plaintiff, which contained the following recital:

"It appearing to the court that plaintiff failed to produce sufficient evidence to establish any negligence on the defendants' part or to constitute a prima facie case against the defendants and it appearing therefore that the motion of the defendants should be allowed".

The plaintiff appealed from the judgment.

It seems obvious that the trial court, in passing on defendants' motion, which defendants did not designate as a motion for a nonsuit, was weighing the evidence and deciding that the evidence would not support a judgment for plaintiff or that the evidence preponderated in favor of defendant. The plaintiff did not object to the weighing of the evidence by the trial court and did not contend that the trial court could only decide whether the plaintiff had proved a case sufficient to be submitted to a jury if there had been

a jury. On the contrary, it is apparent from the colloquy between court and counsel that plaintiff knew that the trial court, in passing on defendants' motion, intended to weigh the evidence and decide whether plaintiff was entitled to recover.

Nevertheless, the plaintiff contends in this court that the only issue before the trial court was "whether plaintiff had proved a case sufficient to be submitted to a jury." Plaintiff relies on *In re Herdman's Estate*, 167 Or 527, 119 P2d 277 (1941), which so held. Plaintiff's contention finds support in the form of the judgment and by a concession in defendants' brief that "a judge in a trial to the court in ruling on a motion for involuntary nonsuit is supposed to determine whether plaintiff has proved a cause sufficient to submit to a jury had there been one". Although we may be engaging in an academic exercise, we feel obliged, in view of defendants' concession, to decide the question as it has been stated and argued in the briefs, but will have more to say later in this opinion about the procedure which should be followed in future cases.

A motion for a nonsuit admits not only all that the evidence proves, but all that it tends to prove. Plaintiff's evidence must be taken as true together with every inference of fact which a jury might legally draw from it. *In re Herdman's Estate*, supra at 530. There was evidence from which the jury could have found the facts hereinafter recited.

Kim was injured when she fell from the fire escape on a two-story multi-unit apartment house adjacent to the unit in which she lived. The fire escape consisted of a "balcony walkway" constructed along the back of the building at the second story level. The balcony was 31½" wide and 121 feet long. The occu-

pants of the second story apartments could climb onto the balcony only through their apartment windows. There was a railing along the outer edge of the balcony 35½″ high, supported by vertical 2 x 4's spaced four feet apart. At the end of the balcony there was a counterbalanced stairway, which provided access to the ground. Although the stairs were counterbalanced and when pushed into an up position would stay there, they would not return to that position automatically.

There were about 100 apartments in the complex and the families living in the apartments included about 300 children of all ages. Occasionally the fire escape stairways were left in the down position and children played on the fire escape walkways and complaints had been made to the defendants by some of the tenants. There was a fenced-off play area in the apartment house complex, but in June 1968 it was being used for storage of debris and was not available as a playground.

On June 19, 1968, Kim, her younger brother Brent, a six-year-old neighbor girl named Lori, and Lori's younger brother named Donny were playing with a basketball near the end of one of the apartment buildings. The fire escape stairs were down. Kim's brother threw the basketball up on the balcony and the two boys went up the stairs to retrieve it and were followed by Kim and Lori. Kim tripped and fell under the balcony railing onto the pavement some ten feet below. The balcony railing was higher than the top of Kim's head.

There was evidence that for a cost of about $149.33 two boards could have been installed horizontally between the railing and the floor of the balcony from which Kim fell so as to leave openings not more than eight inches wide.

■ The duty of a possessor of land to children, whether invitees or trespassers thereon, has been thoroughly considered in *Pocholec v. Giustina,* 224 Or 245, 355 P2d 1104 (1960), and *Bosin v. Oak Lodge San. Dist.,* 251 Or 554, 447 P2d 285 (1968), and need not be further discussed here. It is sufficient to say that we have embraced the rule as stated in 2 Restatement of Torts 2d, § 339, which we will not quote again here. In *Pocholec* we held that "[i]t is for the jury to decide whether the landowner has met the minimum standard of care required for immunity from liability. In doing so, they are required to weigh the utility of the defendant's use and maintenance of his premises and the burden of eliminating the danger against the risk of harm to children." 224 Or at 261. It is clear to us that the evidence in this case, viewed in the light most favorable to the plaintiff, made a question for the trier of fact.

Defendant argues that the balcony walkway was intended for use as a fire escape only, and that whether there was an unreasonably dangerous condition must be determined in light of this intended use. Children frequently make use of conditions or appliances in ways which their owners never intended; the propensity of children to meddle and to misuse is at the heart of many of the cases in this area of the law. It is not the intended use of an area which is determinative under the Restatement test, but whether the owner knows or has reason to know that children will trespass there, and whether he realizes or should realize that the condition involves an unreasonable risk of harm to children.

In order to hold in defendant's favor we would have to hold that the condition described above was not, as a matter of law, unreasonably dangerous. The

*Pocholec* case refused to hold that certain categories of physical hazards will not give rise to liability, describing that approach as unworkable. Instead, the landowner's liability is to be determined by general negligence principles, modified by his special duties to children, and it is ordinarily for the jury to decide whether the landowner has met the minimum standard of care in a particular case. 224 Or at 260-261.

Since plaintiff proved a prima facie case we must reverse the judgment of nonsuit and remand the case for further proceedings not inconsistent with this opinion. The trial court must require defendants to put on their evidence or rest their case and then, as the trier of fact, decide the issues. It is so ordered.

We have concluded that the procedure followed by the trial court in this case should not be used in similar cases in the future. ORS 18.230 provides:

"A judgment of nonsuit may be given against the plaintiff:

\* \* \* \* \*

"(3) On motion of the defendant, \* \* \* when upon the trial the plaintiff fails to prove a cause sufficient to be submitted to the jury."

It will be noted that the statute refers specifically to the sufficiency of the evidence to go to the jury. No statute makes this procedure applicable to nonjury cases. Nevertheless, this court has held that the same rule applies in bench trial as in jury trials. We think that holding was a mistake as this case illustrates.

A number of jurisdictions, like this one, have held the nonsuit procedure available in trials to the court under the same rules as apply in jury trials. See 89 CJS 396-397, Trial § 595 (d); 2 Bancroft, Code

Practice and Remedies 2076-2077, § 1609. Others, however, have held that the judge in such cases, who will have to weigh the evidence in any event, may do so at the close of plaintiff's case. If he finds that plaintiff has failed to carry his burden of proof, the judge may enter a final judgment for defendant on the merits. Leading cases are *Lambuth v. Stetson & Post Mill Co.,* 14 Wash 187, 44 P 148 (1896) and *Porter v. Wilson,* 39 Okla 500, 135 P 732 (1913). In *Lambuth* the court said:

> "* * * When the trial is before a jury, the court cannot weigh the testimony upon a motion for a nonsuit, for the reason that it cannot weigh it at any time; but, when the trial is without a jury, the court must eventually weigh the testimony for the purpose of determining where the preponderance is, and there is no reason why it should not so weigh it at the earliest possible time, when the rights of the plaintiff will not be cut off by its so doing; and when the plaintiff has introduced all of his proof, and rested, no right of his will be cut off if the court then determines what has been proven. It cannot be presumed that plaintiff's case will be strengthened by the evidence put in by the defendant. * * * Hence, under the rule contended for by the appellant, the court might be put in the anomalous position of denying the motion for a nonsuit, and immediately thereafter, upon the refusal of the defendant to put in any proof, deciding the case in his favor. * * *" 44 P at 149.

In the *Porter* case the court said that where the trial court, upon defendant's demurrer to the evidence, had in fact weighed the evidence and decided in defendant's favor, "it would be too subtle a refinement to say that the court should have overruled the demurrer, and thereupon, on the same evidence, have found for the defendant". 135 P at 735.

In *David v. Serges,* 373 Mich 442, 129 NW2d 882 (1964), Mr. Justice Dethmers, dissenting, said:

> "* * * When a jury is waived, or not demanded, and the judge sits as trier of the facts, no sensible reason, and certainly no constitutional involvement, exists for splitting the judge into two entities, one as determiner of the facts and the other of the law, and then applying different rules, on review, as to the manner in which the evidence is to be viewed, depending on whether his honor is thought to have made his decision in his former or his latter role. When a judge sits in a nonjury law case, he is the trier of the facts. When, as such, he decides, at the conclusion of plaintiff's proofs, that plaintiff has not proved defendant's liability, he has decided a fact question. * * *" 129 NW2d at 884.

Under the rule adopted in *Lambuth* and *Porter,* when a trial judge rules in defendant's favor on a motion for nonsuit he may do so as trier of fact after weighing the evidence, rather than merely ruling on its legal sufficiency to support a judgment. If he does so, the question on appeal is not whether there is any evidence to support plaintiff's claim, but whether there is any evidence to support the trial court's findings for defendant.

Most jurisdictions which follow this approach are those in which the federal rules of procedure, or similar rules, have been adopted. The federal rule provides:

> "* * * After the plaintiff, in an action tried by the court without a jury, has completed the presentation of his evidence the defendant, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. The court as

> trier of the facts may then determine them and render judgment against the plaintiff or may decline to render any judgment until the close of all the evidence. \* \* \* Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision \* \* \* operates as an adjudication upon the merits." FRCP 41 (b).

Prior to 1946 Rule 41 (b) did not contain the reference to the determination of the facts by the trial court "as trier of the facts" and there was a division among the circuits as to whether the trial court in these cases could determine the merits upon the defendant's motion for nonsuit. Since the amendment which added this language, the trial court's power to weigh the evidence after the presentation of plaintiff's case is generally recognized in the federal courts and in states having a similar rule. See 9 Wright & Miller, Federal Practice and Procedure 218-227, Civil § 2371; *Estate of Pack,* 233 CA2d 74, 43 Cal Rptr 361 (1965); *Gibson v. Gibson,* 180 S2d 388 (Fla App 1965); *Pichulik v. Air Conditioning & Heating Service Co.,* 123 Ga App 195, 180 SE2d 286 (1971); *Stratton v. Stratton,* 87 Idaho 118, 391 P2d 340 (1964); *Mackey-Woodard, Inc. v. Citizens State Bank,* 197 Kan 536, 419 P2d 847 (1966); *Mutual Benefit Life Insurance Company v. Abbott,* 9 Mich App 547, 157 NW2d 806 (1968); *Giles v. Canal Insurance Company,* 75 NM 25, 399 P2d 924 (1965); *Levy v. Industrial National Bank of Rhode Island,* 106 RI 437, 260 A2d 919 (1970); *Lawrence v. Bamberger Railroad Company,* 3 Utah 2d 247, 282 P2d 335 (1955).

At least two states having a rule of procedure like Federal Rule 41 (b) have refused to give the rule its full scope, but have limited the power of the trial judge to decide the merits in defendant's favor. Alaska has held that even though the judge, as trier of fact,

would find for defendant on the merits at the close of plaintiff's evidence, it is error to do so if the plaintiff has made out a prima facie case, at least if his evidence is unimpeached. *Trusty v. Jones,* 369 P2d 420 (Alaska 1962); *Rogge v. Weaver,* 368 P2d 810 (Alaska 1962). Wyoming has adopted the Alaska position, pointing out that it has especial merit in jurisdictions where findings are not obligatory. *Arbenz v. Bebout,* 444 P2d 317, 319 (Wyo 1968).①

In summary, the reasons advanced for the position epitomized by the federal rules are that it is highly artificial to require the judge, as trier of facts, to first weigh the legal sufficiency of the evidence as though he were presiding over a jury trial and then to act as trier of those same facts, and that the case should be disposed of as early as possible when it may be done without cutting off the plaintiff's rights. The strongest arguments against this position are that it is unfair to the plaintiff who has presented a prima facie case to give the defendant two chances for a favorable determination on the facts, and that it puts too much power in the hands of a single trial judge, who has only heard one side of the case.

■ We prefer the procedure in equity cases, which, of course, are all tried by the court without a jury. No device analogous to the motion for involuntary nonsuit

---

① The federal rule as amended is criticized in Steffen, *The Prima Facie Case in Non-Jury Trials,* 27 U Chi L Rev 94 (1959). Professor Steffen argues that it is undesirable and unrealistic to permit the trial judge to "weigh" plaintiff's evidence without having heard defendant's case, and that the rule gives the defendant an unfair advantage by allowing him two opportunities to submit the case to the trier of fact. He contends that the federal practice really saves very little time, and that small savings is at the expense of the plaintiff who has presented a prima facie case which should entitle him to require that the defendant either rest or put on his case before a final decision is made.

is available to defendants in equity. ORS 18.220 provides for a decree of dismissal "whenever upon the trial of a suit it is determined that the plaintiff is not entitled to the relief claimed or any part thereof". This provision does not entitle a defendant to test the legal sufficiency of plaintiff's evidence at the close of plaintiff's case. Instead the defendant, if he wishes to move for a decree of dismissal, must rest his case and submit the matter to the trial court on its merits. *Newman v. Stover*, 187 Or 641, 643, 213 P2d 137 (1950); *Kelley v. Mallory*, 202 Or 690, 702, 277 P2d 767 (1954).

■ The use of the equity procedure in law actions tried without a jury will insure a final determination in the trial court of the cause on its merits after the court has heard all the evidence that the parties wish to offer. Neither party is placed at a disadvantage by this procedure. If a defendant is confident that plaintiff will not prevail on his own evidence, defendant can rest without offering any evidence and submit the case for decision. If the defendant is not so confident he can offer his proof before resting his case. In either event, the court will be rendering a final judgment. In the long run we think this procedure will expedite the decision of actions tried by the court and eliminate appeals such as this one, which is, in essence, interlocutory. We therefore hold that the defendant in a law action tried to the court without a jury may not test the legal sufficiency of plaintiff's evidence at the close of plaintiff's case. If he wishes to challenge the sufficiency of the evidence he must rest his case and submit the matter to the court on its merits.

Reversed and remanded.