Argued November 6, 1973, affirmed April 18, 1974

LONEY, *Appellant, v.* McPHILLIPS, *Respondent.*

521 P2d 340

*Wesley A. Franklin,* Portland, argued the cause for appellant. With him on the brief were Franklin, Bennett, Ofelt, Des Brisay & Jolles, Portland.

*Douglas E. Kaufman,* Tillamook, argued the cause for respondent. With him on the brief were McMinimee & Kaufman, Tillamook.

BRYSON, J.

This is an action to recover damages for the wrongful death of a 13-year-old boy who drowned while trespassing on defendant's property at Cape Kiwanda on the Oregon coast. Plaintiff's complaint alleged the following material facts:

"II.

"At all times herein mentioned defendant was the owner of certain lands in Tillamook County, Oregon, adjacent to the Pacific Ocean, a portion of which said land is generally known as 'Cape Kiwanda'. That a public highway runs through a portion of Tillamook County near Cape Kiwanda and said cape is readily accessible from the public highway. That because of the view from said cape, people and particularly children have trespassed thereon for many years last past, which fact was and is well known to defendant. That because of the peculiar formation of a 'cove' at said cape, the tides and the wind, said cape is particularly hazardous at high tide and poses an unreasonable risk of death or serious injury to trespassing children. That because of their youth and inexperience children do not realize the risk involved in trespassing upon the cape and the burden of eliminating the risk is slight.

"III.

"On or about May 30, 1971, the deceased in the company of several other youngsters was trespassing upon Cape Kiwanda when he was suddenly and unexpectedly swept into said 'cove' by a wave and lost his life by drowning."

Plaintiff further alleged that defendant was negligent in failing to erect warning signs and fences at the highway or at the edge of the cove.

Defendant demurred to the complaint on the grounds that it failed to state a cause of action. The trial court sustained the demurrer and plaintiff declined to plead further. The court entered an order dismissing the complaint. Plaintiff appeals from that order. We accept the allegations of the complaint as true.

The plaintiff contends that a possessor of land is subject to tort liability for injuries suffered by a child trespasser due to a natural dangerous condition of the land.

The law of this state concerning the special duty of a land possessor to children is set forth in 2 Restatement (Second) of Torts § 339 (1965):

"§ 339.   Artificial Conditions Highly Dangerous to Trespassing Children

"A possessor of land is subject to liability for physical harm to children trespassing thereon caused by an artificial condition upon the land if

"(a)  the place where the condition exists is one upon which the possessor knows or has reason to know that children are likely to trespass, and

"(b)  the condition is one of which the possessor knows or has reason to know and which he realizes or should realize will involve an unreasonable risk of death or serious bodily harm to such children, and

"(c)  the children because of their youth do not discover the condition or realize the risk involved in intermeddling with it or in coming within the area made dangerous by it, and

"(d)  the utility to the possessor of maintaining the condition and the burden of eliminating the

danger are slight as compared with the risk to children involved, and

"(e) the possessor fails to exercise reasonable care to eliminate the danger or otherwise to protect the children."

*See Karoblis v. Liebert*, 263 Or 64, 69, 501 P2d 315 (1972).

The caveat to section 339 provides that "[t]he Institute expresses no opinion as to whether the rule stated in this Section may not apply to natural conditions of the land." This caveat is explained in comment *p* to section 339:

"* * * The Caveat leaves open the question whether the rule stated in this Section may not apply to natural conditions of the land. The case law thus far indicates that it does not so apply; but in all of the decided cases the condition has been one, such as a body of water, which the child might be expected to understand and appreciate, as stated in Comment *j*. In most instances the burden of improving land in a state of nature in order to make it safe for trespassing children would be disproportionately heavy * * *, and for that reason alone there would be no liability. Cases may, however, arise in which there would be no such disproportionate burden, and the natural condition is one which the child could be expected not to understand. The Caveat leaves open the possibility of liability in such a case."

Plaintiff contends that "other Courts have now abandoned any distinction between natural and artificial conditions," but only two cases are cited—*Martinez v. Louis Lyster, General Contractor, Inc.*, 75 NM 639, 409 P2d 493 (1965), and *Lyshak v. City of Detroit*, 351 Mich 30, 88 NW2d 596 (1958). These cases do not involve injury due to natural conditions of the land. In

*Martinez,* a seven-year-old boy was injured when he fell while playing on culvert pipes stacked in pyramid fashion. In *Lyshak,* a seven-year-old boy was injured when struck by a golf ball while he was trespassing on the golf course. The court stated, "[i]n the interests of accuracy, it should be pointed out that the case before us does not involve injury from the mere physical condition of the premises, whether natural or artificial * * *." In the later case of *Swanson v. City of Marquette,* 357 Mich 424, 98 NW2d 574, 576-77 (1959), involving injury to a trespassing child from high voltage wires, "a static condition, artificially created," the Michigan court adopted 2 Restatement (Second) of Torts, § 339.

Several writers have urged the courts to abandon the distinction between artificial and natural conditions in relation to this special duty to children. See Prosser, *Trespassing Children,* 47 Calif L Rev 427, 446-47 (1959); Rubin, *Torts: Attractive Nuisance Doctrine: Applicability to Natural Conditions,* 2 Okla L Rev 537 (1949); and Batson, *Trespassing Children: A Study in Expanding Liability,* 20 Van L Rev 139, 152-53 (1966), wherein it is stated:

> "The expansion of the doctrine to natural as well as artificial conditions would appear reasonable. But, since no case has arisen on the point—and until such a case arises the drafters [of the Restatement (Second) of Torts § 339] are unwilling to express their opinion in anything more than a caveat—this particular suggestion appears to be of little consequence." *Id.* at 150.

Other writers and the courts require an affirmative arrangement of the dangerous condition by some non-natural agency. See 2 Harper & James, The Law of Torts 1452-453 (1956); Green, *Landowner v. Intruder;*

*Intruder v. Landowner. Basis of Responsibility in Tort,* 21 Mich L Rev 495, 520-21, n. 104b (1923); Annot., 8 ALR2d 1254, § 33 (1949); 65 CJS Negligence § 63 (82) (1966) and cases there cited. We find no cases wherein the court has extended the landowner's duty to children under the so-called "attractive nuisance" doctrine to include natural conditions.[1]

In *Pocholec v. Giustina et al,* 224 Or 245, 251-52, 355 P2d 1104 (1960), we approved the language in 2 Restatement (Second) of Torts, § 339, and Dean Prosser's summary of the law, *Trespassing Children,* 47 Calif L Rev 427 (1959), which makes no distinction between artificial and natural conditions of the possessor's land. However, in *Pocholec* the distinction between an artificial and a natural dangerous condition of the land was not before the court. In that case, a nine-year-old boy drowned in an artificial log pond constructed solely for storage of logs at the defendant's mill. We affirmed a judgment entered upon a jury verdict for defendant.

The distinction between artificial and natural conditions of land has been rationalized on several grounds: that children are presumed to appreciate conditions which occur in nature;[2] that an extension of liability for natural conditions would impose on the

---

[1] Corporation of the City of Glasgow v. Taylor (1922), 1 App Cas 44 (Scot.), 29 ALR 846, has been cited for the proposition that the origin of the dangerous condition is of no consequence under the attractive nuisance doctrine. See W. Prosser, Law of Torts 367, n. 59 (4th ed 1971). *Glasgow v. Taylor* involved a child eating some poisonous berries which had been planted and which were, therefore, not a natural condition of the land. For this reason, the case affords no support to plaintiff's position.

[2] Plotzki v. Standard Oil Co., 228 Ind 518, 92 NE2d 632 (1950) (artificial pond which merely reproduced the risk created by a natural pond, a risk of which children are presumed to be aware).

land occupier an affirmative duty in favor of a mere trespasser, which the law is reluctant to do;[8] that as to " 'common dangers existing in the order of nature, it is the duty of parents to guard and warn their children, and, failing to do so, they should not expect to hold others responsible for their own want of care;' "[9] and that "* * * the burden of improving land in a state of natural condition in order to make it safe for trespassing children would be disproportionately heavy * * * ."[10]

Without passing on the validity of these rationales, we believe the distinction between artificial and natural conditions of land, as to trespassing children, can and should be continued in Oregon on the basis of public policy.

The Oregon Blue Book for 1973-74 states, at 160-61:
"Public Lands in Oregon
"With more than half its land held by the federal government, Oregon ranks high among the public land states. Of the 61,664,000 acres of land within its borders, 52% or 32,089,000 acres, is owned by the United States and another three percent by state and local governments.
"* * * * *

"The character of the lands in public ownership is important to their present management and to their future significance to the economy of the state. Some of the most valuable timberlands are publicly held, as are much of the low-value grazing lands. Many areas of scenic and recreational interest are owned by federal and state governments. One of

---

[8] See 2 Harper & James, The Law of Torts §§ 27.3, 27.5 at 1452 (1956). See generally, McNiece & Thornton, *Affirmative Duties in Tort,* 58 Yale L J 1272 (1949).

[9] Tavis v. Kansas City, 89 Kan 547, 553, 132 P 185, 187 (1913).

[10] 2 Restatement (Second) of Torts § 339 (1965), Comment p.

the most important to this purpose is the state's ownership of the Pacific Ocean beaches and the beds of other navigable waters. * * *

"* * * Adding to the principal land-management agencies are city-owned areas, reclamation and dam projects, highway rights of way, game reserves, parks and recreation agencies and many miscellaneous public holdings.

"* * * * *.

"* * * [T]oday the problem has become one of judicious management to meet the economic and recreational needs of an expanding land-hungry population."

The State of Oregon also administers 232 state parks which encompass 88,300 acres of land near Oregon's numerous mountains, valleys, lakes, rivers, and the Pacific Ocean. See Oregon Blue Book at 164-65.

A large portion of the acreage now owned or managed by governmental agencies is preserved in its natural state.[9] In addition, private individuals and corporations in the timber, agriculture, livestock and private utility industries own additional millions of acres of land in its natural state, a large portion of which is open to the public for recreational purposes.

To encourage private owners to make their land available to the public for recreational purposes, the

---

[9] Under the Federal Tort Claims Act, 28 USCA §§ 1346, 2671-78, 2680 (1952), the tort liability of the United States is governed by the law of the state where the tortious conduct took place. Richards v. United States, 369 US 1, 82 S Ct 585, 7 L Ed 2d 492 (1962). See Annot., 7 L Ed 2d 994 (1962). The Oregon Tort Claims Act is set forth at ORS 30.260 *et seq* and is discussed in Henke, *Oregon's Governmental Tort Liability Law From a National Perspective,* 48 Or L Rev 95 (1968). A decision favorable to plaintiff in this case would have the effect of broadening governmental tort liability under each of these statutes.

1971 Legislature adopted ORS 105.655 to 105.680 inclusive, which provide in part as follows:

"ORS 105.660. Policy. The Legislative Assembly hereby declares it is the public policy of the State of Oregon to encourage owners of land to make their land available to the public for recreational purposes by limiting their liability toward persons entering thereon for such purposes."

"ORS 105.665. Duties and liabilities of owner of land used by public for recreation. Except as otherwise provided in ORS 105.675:

"(1) An owner of land owes no duty of care to keep the land safe for entry or use by others for any recreational purpose or to give any warning of a dangerous condition, use, structure or activity on the land to persons entering thereon for any such purpose.

"(2) An owner of land who either directly or indirectly invites or permits any person to use his land for any recreational purpose without charge does not thereby:

"(a) Extend any assurance that the land is safe for any purpose;

"(b) Confer upon such person the legal status of an invitee or licensee to whom a duty of care is owed; or

"(c) Assume responsibility for or incur liability for any injury, death or loss to any person or property caused by an act or omission of that person."

ORS 105.655 to 105.680 inclusive were affirmed and amended by Chapter 732, Oregon Laws 1973 but with no significance to this case.

In *Bilbao v. Pacific Power & Light*, 257 Or 360, 363, 479 P2d 226 (1971), a case involving injury to plaintiff while on defendant's property in the State of Washington devoted to public recreation, we held that the defendant's duty to the plaintiff was defined

by a similar statute in the State of Washington, RCW 4.24.210.

The need for preservation of and access by the public to the state's land and open space resources is further recognized by the following legislative policy enactments:

"ORS 390.010 Policy of state toward outdoor recreation resources. The Legislative Assembly recognizes and declares:

"(1) It is desirable that all Oregonians of present and future generations and visitors who are lawfully present within the boundaries of this state be assured adequate outdoor recreation resources. It is desirable that all levels of government and private interests take prompt and coordinated action to the extent practicable without diminishing or affecting their respective powers and functions to conserve, develop, and utilize such resources for the benefit and enjoyment of all the people.
"* * * * * *

"(3) It is in the public interest to increase outdoor recreation opportunities commensurate with the growth in need * * *.
"* * * * * *

"(5) It shall be the policy of the State of Oregon to supply those outdoor recreation areas, facilities and opportunities which are clearly the responsibility of the state in meeting growing needs; and to encourage all agencies of government, voluntary and commercial organizations, citizen recreation groups and others to work cooperatively and in a coordinated manner to assist in meeting total recreation needs through exercise of their appropriate responsibilities."

A rule such as proposed by plaintiff would tend toward the closure of private open-space land and would work adversely to the public policy of Oregon as declared by the Oregon Legislature.

Public policy compels the conclusion that the duty of care of a land occupier to trespassing children should not be extended to natural dangerous conditions on the land.

Plaintiff further requests that this court reverse the trial court by abolishing the traditional legal distinctions between trespassers, licensees, and invitees. *See Rowland v. Christian,* 69 Cal 2d 108, 70 Cal Rptr 97, 443 P2d 561 (1968). Nothing would be served in this case by adopting the "straight negligence" rule of *Rowland v. Christian, supra,* because we now apply general negligence principles of law in determining the landowner's duty of care to children. *Pocholec v. Giustina et al, supra; Bosin v. Oak Lodge San. Dist.,* 251 Or 554, 559, 447 P2d 285, 287 (1968); *Karoblis v. Liebert, supra.*

We conclude that the trial court properly sustained defendant's demurrer to plaintiff's complaint.

Affirmed.

O'CONNELL, C. J., dissenting.

The majority opinion concludes that the attractive nuisance doctrine "should not be extended to natural dangerous conditions on the land" because it "would tend toward the closure of private open-space land and would work adversely to the public policy of Oregon as declared by the Oregon legislature."

Admittedly, the legislature has declared that it is in the interest of the public to provide outdoor recreation areas. But the legislature did not say that this public interest is to be served by insulating from liability landowners who expose children to unreasonable risks which could be avoided without undue or

disproportionate expense to the landowner. As Dean Prosser has observed:

"It is difficult to see why the origin of the condition should in itself make all the difference, so long as the possessor permits it to remain. Obviously, in the ordinary case, the owner would be under an impossible and prohibitive burden if he were required to improve wild land in a state of nature to make it safe for trespassing children; and no doubt in the great majority of cases this will be a controlling reason for holding that he is not negligent, as a matter of law. But what if there is no such burden. Suppose a beach, on which the young children of the neighborhood habitually trespass, wade and swim, with a hidden drop-off ten feet from shore. If it were an artificial beach, the owner would at least be required to put up a warning sign. Is he absolved from that responsibility by the fact that the beach has always been there, and he has not changed it? The prediction may be ventured that he is not." Prosser, Trespassing Children, 47 Calif L Rev 427 at 446-47 (1959).

The extension of the attractive nuisance doctrine to natural conditions which are dangerous to children will not impose upon a defendant any greater burden to protect them than he has where the condition is created by him. In either case, the landowner has the burden only of taking reasonable precautions against exposing the child to danger and in either case, as Prosser points out, "* * * [i]f nothing effective can be done to protect him without undue and disproportionate trouble and expense to the defendant, there is no liability even for a clearly recognizable risk, demonstrated by past experience, that children may get into trouble, so long as the risk is not too extreme." (*Id.* at 465.)

I would reverse.